## VERNON STACEY v. STATE.

No. A-10274.   Jan. 31, 1945.

(155 P. 2d 736.)

Champion & Fischl, of Ardmore, for plaintiff in error.

Randell S. Cobb, Atty. Gen., and Sam H. Lattimore, Asst. Atty. Gen. for defendant in error.

JONES, J. This is an appeal from a conviction sustained in the district court of Carter county, wherein the

defendant, Vernon Stacey, was sentenced to serve a term of fifteen years imprisonment in the State Penitentiary for the crime of manslaughter in the first degree.

No question as to the sufficiency of the evidence having been raised, it is not necessary to give an extensive review of the evidence. The defendant shot and killed the deceased, W. A. Hull, at the Trolley Tavern, near the city limits of Ardmore, early in the morning of October 5, 1941. The deceased and three or four other men, who lived near Marietta, had gone to Ardmore on Saturday evening, October 4, 1941. They were drinking. Early in the evening, they went out to the Trolley Tavern and spent the night there and in a filling station nearby playing poker and drinking. The defendant went to the tavern before midnight and played in the poker game until it broke up about 5 a. m. The deceased was in a rowdy mood and had a scuffle with a stranger who came to where the poker game was in progress about 2 a. m. About daylight, the deceased and defendant had an argument over a 50-cent piece which the defendant claimed the deceased had jerked from his hand. The argument started in the Trolley Tavern, but, at the command of the tavern keeper, the parties went outside of the tavern, where the argument continued. Shortly thereafter, the defendant re-entered the tavern, and there was a dispute in the evidence as to whether he was pursued by the deceased. Defendant stated that he was pursued by the deceased and ran around behind the counter looking for a gun or something to protect himself. He opened a drawer near the cash register, seized a 45-caliber revolver, snapped it once, and then shot the deceased in the head, killing him almost instantly. The deceased did not have any weapon.

Testimony by the defendant's witnesses showed that the deceased was of a quarrelsome disposition. He was

a smaller man, however, than defendant. The defendant had previously been convicted of many crimes, including robbery with firearms, grand larceny, burglary, and was convicted once in the federal court for a violation of the prohibition laws.

It is first contended that the court erred in overruling defendant's motion for a continuance. This motion is based upon the grounds that the defendant did not have time to prepare for trial and the absence of material witnesses.

The crime occurred on October 5th, the case was set for trial on November 6th, which was about three weeks after the information was filed against the defendant in the district court. The motion contained an allegation that there were witnesses available in Murray county and other places whose names were unknown to the defendant. That defendant's counsel had tried to locate them, but that he had been busy in the state and federal courts and that weather conditions had been bad and he had been unable to find the men. Affidavits were attached to the motion in which it is stated that, if the witnesses were procured, they would testify concerning an altercation had by the deceased with a man in the filling station shortly before the killing occurred, and that the witnesses in Murray county would testify that the deceased, while under the influence of intoxicating liquor, was a dangerous man.

When this motion was presented, the county attorney offered to admit that the deceased had the altercation with a man during the night at the filling station, and further offered to admit that, if the witnesses were procured, they would testify to the facts as set out in defendant's motion.

As herein above pointed out, in the summation of the evidence, the defendant made a showing by several witnesses that the deceased had a bad reputation for being quarrelsome and fighting while under the influence of intoxicating liquor. The testimony of the other witnesses named in the motion, therefore, who would testify to these facts would merely have been cumulative. The state did not even make any attempt to refute this contention of defendant as to the deceased's reputation.

From the allegations of the motion, the trial court could only conclude that the existence of witnesses such as claimed by the defendant was speculative, their names were unknown, and there was nothing by which the court could determine any probability of their presence being secured if the case were continued to another term. The motion did not comply with the rules of law established by this court pertaining to continuances on the ground of the absence of material witnesses. Jackson v. State, 72 Okla. Cr. 226, 114 P. 2d 953; Lane v. State, 65 Okla. Cr. 192, 84 P. 2d 807.

An application for a continuance on account of the absence of material witnesses is addressed to the sound discretion of the trial court, and unless an abuse of discretion is shown, the judgment will not be reversed on appeal. Alexander v. State, 66 Okla. Cr. 219, 90 P. 2d 949; Gorum v. State, 67 Okla. Cr. 75, 92 P. 2d 1986; Phillips v. State, 71 Okla. Cr. 287, 111 P. 2d 203, 204.

It is next contended that the defendant did not have a fair and impartial trial because of misconduct on the part of the county attorney and the trial court. At the commencement of the trial, counsel for defendant called off the names of the witnesses subpoenaed by him to see whether they were present. When the name of the wit-

ness Ted Dickson was read, the county attorney stated: "He said he thought he would be sick." It was disputed as to whether the county attorney's statement was sufficiently loud for the jury to hear. The trial court in ruling upon this stated that he did not think the jury heard the remark. An attachment was issued for this witness and he was brought into court and testified. During his testimony, he stated that he actually was sick and would not have appeared had he not been brought into court under the attachment issued by the trial judge.

It is, also, contended that the county attorney erred in his cross-examination of the defendant concerning other convictions. We recently decided the case of Little v. State, 79 Okla. Cr. 79, 154 P. 2d 772, in which this precise question was discussed. Incidentally, it involved the same attorneys who appear in the instant case. The interrogation in the Little Case was at greater length than herein. In the instant case, the county attorney sought only to show the name of the crime in which the conviction has been sustained. Counsel for defendant contends that he may ask the accused whether he has been convicted of a felony and that in case of an affirmative answer, the prosecution has no right to further cross-examine concerning the nature of the conviction.

In Little v. State, supra, it is stated:

"The conviction, the name of the court in which the conviction occurred, the nature of the crime, and the date are all pertinent factors but the details of the crime involve extraneous matters concerning which the prosecution should not inquire. . . "

We have given careful consideration to the contention that the trial judge by his conduct showed bias and prejudice against the defendant and so dominated the pro-

ceedings that the defendant was denied a fair trial. In the brief of defendant are cited a large number of instances where the trial court interrupted the examination of witnesses with such statements as:

"Don't argue with the witnesses."
"Don't ask him that, it is not competent."
"Quit arguing with the witness."
"I'll not let him answer that question in that form."
"Quit leading the witness."
"You are not answering the question."
"I don't think that is material."
"Listen to the question and keep your mouth closed until you know what the question is."

It is insisted that these statements and others of a similar nature were made throughout the trial without any objections by either counsel being interposed and that the tone of voice and facial expression of the judge showed bias and prejudice against the accused.

In the many cases that are appealed to this court, we find a great variance between methods used by various trial judges. We know of no trial judge who intentionally is unfair to one accused of crime. Occasionally, however, some of the records will disclose that the trial court becomes so impressed with the guilt of the accused that he makes remarks which have the effect of conveying to the jury the feeling possessed by the court. Some of the courts are too lenient in the manner in which they control the trial of criminal cases and allow counsel for defendant to dominate the proceedings. Others, particularly those who have had experience in the office of prosecutor, and apparently wholly without any intention of being unfair, do so restrict defendant and his counsel in the presentation of their evidence that the defendant is denied a fair hearing. On the other hand, we often find counsel for

defendant saying things in the presence of the jury or making efforts to secure the admission of evidence which if done on the part of the county attorney would have been gross error.

Even though there is an excess of interference on the part of the trial court in the conduct of the trial, still the case ought not to be reversed on account of such interference, unless this court can say, after a review of the whole record, that the action of the trial court resulted in a miscarriage of justice and was so grossly improper that it denied the accused a fair trial.

An examination of the record herein shows that the trial judge was very firm in exercising complete control of the proceedings. He was harsh with both counsel for the state and counsel for defendant when it came to interrupting them in their examination of the witnesses. Some of the statements made by the court were not necessary to the maintenance of an orderly trial, but we cannot conclude, after a consideration of the entire record, that the trial court by his actions showed prejudice against the accused. Certainly, the penalty imposed by the jury did not indicate that they had allowed passion or prejudice to affect their verdict as there is no justification, even under the testimony of the accused, for the taking of the life of the deceased. Irrespective of the bad reputation possessed by the deceased, there had been nothing in his actions during that night, nor on any other occasion mentioned by character witnesses, to show that he ever did more than to fight with his fists. He gave no indication of doing more than this to the defendant, even under defendant's evidence. Under the evidence of the state's witnesses, the deceased was standing still and making no overt action when he was shot. The accused did not have

the right to take the life of the deceased, unless it was apparent that such action was necessary in order to protect his own life or to protect himself from serious bodily harm.

Lastly, it is contended that the court erred in refusing to allow the defendant to introduce the minutes of the district court of Love county, to show a conviction sustained by the deceased in that county. Counsel for the defendant merely mentioned this proposition in their brief without citing any authorities or without making any argument to sustain the admission of such evidence. The trial court allowed the introduction of evidence of the bad reputation of the deceased for being a quarrelsome and fighting man, but we can perceive of no rule of law which would justify the admission of the evidence of the minutes of a clerk showing a conviction against the deceased. Unless such issue is raised in some manner in connection with some other question in the trial, and a proper predicate laid for the admission, it would not have been admissible. Even then, it is apparent that the formal judgment signed by the judge would be the best evidence of the conviction instead of the minutes of the clerk.

We have found no errors other than such minor irregularities that are often attendant upon a hard-fought and closely contested trial. They are none of such importance that this court would feel justified in reversing this cause for a new trial. The judgment of the district court of Carter county is accordingly affirmed.

BAREFOOT, P. J., concurs. DOYLE, J., not participating.