Ronald Eugene BATTLES, Appellant.

v.

The STATE of Oklahoma, Appellee.

No. PC–73–38.

Court of Criminal Appeals of Oklahoma.

Aug. 30, 1973.

Larry Derryberry, Atty. Gen., Fred H. Anderson, Asst. Atty. Gen., Kenneth L. Delashaw, Jr., Legal Intern, for appellee.

## OPINION

BLISS, Presiding Judge:

In the District Court of Oklahoma County, Case No. CRF–71–2279, appellant, Ronald Eugene Battles, hereinafter referred to as defendant, was charged, tried and convicted for the offense of Armed Robbery. His punishment was fixed at one hundred (100) years imprisonment. From that judgment and sentence, defendant made application to the District Court of Oklahoma County for post-conviction relief. In an order dated May 9, 1973, the District Court denied post-conviction relief. From the District Court's denial of post-conviction relief, defendant has perfected his timely appeal to this Court.

At the trial Orville Bennight testified that on September 21, 1971, he was working as a Nicoma Park Policeman. On this date he was dispatched to the Park's Shoeland to investigate a reported armed robbery. During Bennight's investigation, he found, in the back room of the store, a loaded revolver marked as State's Exhibit 1. At the time of his arrival, Mr. and Mrs. Winings, the owners of the store, were present but no other persons associated with the robbery were on the premises. Further, on cross-examination Bennight's testimony revealed that at a lineup, Mrs. Winings was unable to positively identify defendant, but was able to establish he fit the general description of the person who committed the robbery of her store.

Mrs. Darrell Winings testified that she operated the Park's Shoeland located at 2412 North Western, Nicoma Park, Oklahoma. At approximately 6:30 p. m. on the above mentioned date, a black male entered the store and walked into the men's shoe section. While Mrs. Winings laced a pair of boots for him, two black males, one armed with a pistol which she identified as similar to State's Exhibit 1, rushed through the front door. They demanded money to which Mrs. Winings responded stating that all money in the store was contained inside of the cash register. One of the pair proceeded to the rear of the store and brought Mr. Winings to the front. Mr. and Mrs. Winings were then instructed to lie on the floor, facedown, and then later instructed to crawl to the rear of the store where they were bound with belts and gagged. Further, she stated that at the time she escaped her bonds, she ran from the store and flagged down a passing police officer. She determined approximately one hundred and nine dollars ($109) had been removed from the cash register and from her and her husband's person. During the entire episode the robbers instructed them not to observe them but to look away.

Darrell Winings testified that on the above date his wife operated the above mentioned shoe store, a stored owned in partnership between him, his wife and his

daughter. On the above date he was present in the store during the occurrence of the robbery. While he was at the rear of the store, a black male approached him and informed him his wife wanted to see him at the front of the store. Upon arriving at the front of the store, he observed, and positively identified defendant as the member of the trio who had a handgun placed at his wife's back. Further, he stated that as he entered the front area of the store he observed a third man standing behind the cash register. Winings stated the trio instructed them to lie facedown on the floor and crawl to the rear of the store. There they were bound and gagged prior to the trio's leaving. Winings estimated approximately one hundred and nine dollars ($109) had been removed from his wallet, his wife's purse, and the cash register in the store. Finally, Winings stated the robbers left the gun they used to commit this offense on the desk in the rear of the store.

Thereupon, the State rested.

Henry Battles, defendant's father, testified that at approximately 5:00 p. m., September 21, 1971, he was working at the Grimes 66 Service Station, Oklahoma City, Oklahoma. He stated that on this day his son, Bob Battles, who was also employed at the above station, while on the job, sustained an injury which required hospital care. Henry Battles stated that upon being informed that his son sustained this injury, he left for the hospital and arrived at the hospital at approximately 6:35 p. m. Upon his arrival he observed Bob Battles lying on a table. Defendant was present when he arrived and did not leave the hospital until approximately 11:00 p. m. that evening, the time of his departure.

Bob Battles, Bernice Martin, Linda Sue Farmer, Orilla Battles, Edward W. Jones and Tina Johnson testified corroborating Henry Battles' testimony concerning defendant being present at the hospital at the alleged time of the robbery.

Don Battles, defendant's twin brother, testified that on the evening of September 21, 1971, police officers placed him under arrest for "strong armed robbery." While he was dressing and preparing for the trip to the police station, defendant arrived at his residence. Upon defendant's arrival the police officers placed defendant under arrest and allowed Don Battles to remain at his residence.

Thereafter the defense rested.

Darrell Winings, Larry Rogers, and John Lanning testified for the State in rebuttal.

Orilla Battles testified for the defense in rebuttal.

 Defense counsel submits his first assignment of error a comment made by the trial judge during the course of direct examination of State's witness, Mrs. Darrell Winings, constituted an improper conclusory comment by the trial judge. That comment reads as follows:

"THE COURT: She said the first one that came in was the tall one, and that is this defendant. Now then she said that the third one that came in went to the back. It had to be one of the others."

The comment made by the trial judge was improper as it expressed an erroneous statement of Mrs. Winings' testimony. During the course of her testimony, it was revealed she could not identify the accused. She was able only to testify as to the physical characteristics of one of the robbers and that defendant possessed those characteristics. The instant case, however, is very closely in point with the recent decision of this Court, Farmer v. State, Okl. Cr., 507 P.2d 1303 (1973). The following language may be found in the body of the above opinion:

"Defendant's fourth proposition asserts: 'The trial court made observations from the bench, assisted the state in the presentation of the case, and commented on the evidence in the presence of the jury to such point that the defendant was deprived of the fair and impartial trial to which he was entitled.' In the case of

Stacy v. State, 79 Okl.Cr. 417, 155 P.2d 736 (1945), this Court held in the tenth paragraph of the Syllabus:

'Where it is contended that trial court continually interrupted the examination of witness by counsel for defendant with statements which prejudiced the defendant, the entire record will be considered to determine whether the statements complained of were so grossly improper as to prevent the accused from having a fair trial.'

"We have examined the entire record and are of the opinion that the complained of statements made by the trial court were not so grossly improper as to prevent the defendant from having a fair trial."

In the instant case there is unequivocal identification of defendant as one of the perpetrators of the instant offense. If considering this unequivocal identification in light of the court's comments upon the evidence not being inflammatory nor prejudicial, and further considering the entire record in this matter, it is this Court's opinion *Farmer*, supra, is applicable to the instant circumstance and consequently the comment complained of does not serve as a ground for reversal of this sentence as defendant received a fair trial for the offense. We therefore find this proposition without merit.

▮▮▮ In defense counsel's second proposition, he submits the pretrial identification procedure is tainted and does not comply with Wade v. United States, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967). Consequently, he submits evidence of defendant's identification should be suppressed. The general rule regarding motions to suppress assigns the burden to the accused to offer evidence in support of an alleged impropriety in proceedings. Ruhm v. State, Okl.Cr., 496 P.2d 809 (1972). If the irregularity complained of is not manifested in the record, there is a presumption of regularity from the record's silence. When the record does not support defendant's allegation, the identification was

tainted, the accused clearly must request rehearing on the pretrial identification procedure by timely objecting to the courtroom identification of defendant for the reason the identification is based upon pretrial lineup or photograph. Davis v. State, Okl.Cr., 467 P.2d 521 (1970). Absent a timely request or objection, counsel must rely on the record to establish a tainted identification. Counsel did not object to the incourt identification for the above reason. There is nothing in the record before this Court which sustains the accused was identified from a source other than observations made by witnesses at the scene of this offense. For the above reasons we find this proposition to be without merit.

▮▮▮ In defendant's final proposition, it is submitted the rebuttal testimony of Officer Larry Rogers harpooned defendant with evidence of a collateral offense. In passing upon counsel's motion for mistrial on the question, the trial judge made the following statement:

"THE COURT: In view of the cross-examination raising the issue of the reason the officer arrested this defendant, the Court is of the opinion that the District Attorney had no alternative except to ask the questions. Therefore, the Court is of the opinion that the questions and answers are proper, and motion for new trial is overruled. Exceptions are allowed. Anything further from this witness?"

It is a well established rule of law in this State that a defendant may not "open the door" to certain collateral matters and complain on appeal that the State has committed error by entering into such matters. See Luker v. State, Okl.Cr., 504 P.2d 1238 (1973). We have carefully studied the complained of testimony and have determined the testimony in question was solicited on cross-examination by defense counsel and the State did not go beyond the permissible realms of redirect-examination in examining these collateral matters as produced by defense counsel. Therefore,

counsel may not complain this evidence was improperly presented to the jury. The error committed was committed by defense counsel.

The judgment and sentence is affirmed.

BUSSEY, J., concurs.

BRETT, J., dissents.