### JOHN GLENN v. STATE.

No. A-9785. June 4, 1941.
(114 P. 2d 192.)

166

George L. Sneed, of Madill, and Newman & Phillips, of Durant, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Jess L. Pullen and J. Walker Field, Asst. Attys. Gen., for defendant in error.

JONES, J.   The defendant, John Glenn, was charged in the district court of Marshall county with the offense of embezzlement, was tried, convicted and sentenced to serve three years in the State Penitentiary, and has appealed to this court.

The various assignments of error will be discussed in the order in which they are presented in the brief of defendant.

It is first contended by the defendant that the county judge, sitting as a committing magistrate, erred in transferring the case from the county court to the justice of the peace court at Kingston upon the affidavit for a change of venue filed by the defendant for the reason that the nearest justice of the peace was at Madill.

The preliminary complaint was filed before the county judge of Marshall county at Madill.   Upon the filing of the affidavit for change of venue, the court made an order granting the change of venue, and the court clerk transmitted the papers in the case to the justice of the peace at Kingston.   It is stipulated in the record that the Kingston justice of the peace district is an adjoining district to the city of Madill.

It is provided in the Oklahoma Constitution, sec. 17, art. 7, Okla. St. Ann. Const.:

"County courts shall also have and exercise the jurisdiction of examining and committing magistrates in all criminal cases."

Section 3335, O. S. 1931, 39 Okla. St. Ann. § 501, provides:

"In criminal proceedings a change of place of trial may be had in a cause triable before a justice under the provisions of this article, or upon which a preliminary examination may be held, at any time after the defendant appears, and before any subpoenas are issued, when he or some one for him files an affidavit that he has reasons to believe and does believe that he cannot have a fair and impartial examination or trial, as the case may be, before the justice or county judge, whereupon the county attorney, or some one for him, may file an affidavit alleging the same disqualification against any one justice to whom it is proposed to send the cause for further proceedings, and thereupon the cause shall be sent to the next nearest justice who is in no way related to the defendant or prosecuting witness or party injured who is not a witness and has not been an attorney in the cause, and who may not be absent or physically be unable to act. * * *"

It is contended that the justice of the peace district at Madill, being in the same city in which the county court is located, is the nearest justice of the peace, and where no objection is filed by the county attorney that the papers should have been sent to that district.

The proof shows that prior to this time, a case had been filed before the justice of the peace at Madill charging the same offense upon which the defendant was later convicted. That this case was later dismissed before the justice of the peace.

The county attorney who filed the complaint herein did not participate in the preliminary proceedings, and later filed his disqualifications with the district judge, and a special prosecutor was appointed by the district judge. In addition, the Attorney General also appeared for the state. At the time the affidavit for a change of venue was filed, there was no one appearing before the county court for the state. For this reason there was no one to object in accordance with the statute on behalf of

the transferring of the case to the justice of the peace in Madill. Apparently, from the record, the county judge felt that the justice of the peace at Madill was disqualified from proceeding with an examination in said cause, and accordingly had the papers transferred to the adjoining justice of the peace district at Kingston. Objection to proceeding before this justice of the peace was made and overruled at the beginning of the preliminary examination.

Later, when the defendant challenged the jurisdiction of the district court upon arraignment for the reason that he had not had a preliminary examination as required by law, it was admitted by the prosecution that H. F. Keller, the justice of the peace at Madill, was the nearest justice of the peace to the county court at Madill, and that he was not disqualified under the statute.

Under this statute, section 3335, supra, it is mandatory upon the examining magistrate to transfer the cause immediately upon the filing of proper affidavit for a change of venue. As to whether the magistrate has any discretion in determining who is the nearest justice of the peace, as contemplated by the statute, this court has never had occasion to decide. It will be noted that there are certain limitations in section 3335, supra, requiring that the nearest justice of the peace be qualified, which would seem to vest in the magistrate the judicial discretion of determining who is the nearest qualified justice of the peace. He may not arbitrarily refuse to send a transcript to the nearest justice of the peace; but if there are facts before the magistrate indicating that the nearest justice of the peace is disqualified, he is vested with the discretion of refusing to send to that justice of the peace and should send the papers to the next nearest justice of the peace who is qualified under the statute. Here it appears that the county judge was under the mistaken impression that the

justice of the peace at Madill was the same justice of the peace before whom a hearing had formerly been held on a similar charge of embezzlement against the defendant.

All that either the state or defendant is entitled to is a fair and impartial examination before a disinterested and impartial magistrate. A complete transcript of the record taken before the committing magistrate has been made a part of the record herein. The evidence introduced by the state at the preliminary hearing was substantially the same as that introduced upon the trial in the district court. There has never been any contention made before the committing magistrate who conducted the examination, before the district court or in this court that the magistrate who conducted the preliminary proceedings was unfair or disqualified in any manner. On the other hand, the transcript of the proceedings showed that the rulings were fair and that there was an abundance of evidence to support the order of the court binding the defendant over to the district court for trial.

If we should assume that the county judge erred in not transferring the papers in said case to the justice of the peace at Madill, still such error would only be a technical violation of a directory provision of the statute and, in the absence of any showing of injury, is not of such importance as to require a reversal of this case.

It is well settled that it is not error alone that reverses judgments of conviction of crime in this state, but error plus injury; and the burden is upon the defendant to establish the fact that he was prejudiced in his substantial rights by the commission of error. Murphy v. State, 71 Okla. Cr. 1, 112 P. 2d 438; Newman v. State, 35 Okla. Cr. 296, 250 P. 554; Starr v. State, 7 Okla. Cr. 574, 124 P. 1109.

It is next contended that the court erred in permitting the state to endorse the name of C. P. Strother as a witness on the information and permitting him to testify over the objection of the defendant during the trial and in refusing to delay the case to give defendant an opportunity to investigate the matters testified to by this witness.

In considering this assignment, it is necessary to set forth the substance of the evidence relied upon by the state. The state introduced in evidence the letters of guardianship, the oath, and the bond of the defendant when he was appointed guardian of Tom Lewis, an Indian minor. The appointment was made on May 1, 1928. The minor was a young Indian boy who had inherited a small interest in some land, but whose principal estate consisted of certain moneys to be paid him as the proceeds of a policy of war risk insurance on the life of his father, a deceased veteran of the World War. The said minor, Tom Lewis, upon becoming 17 years of age, filed a petition in the county court of Marshall county praying for the removal of the defendant as his guardian and nominating one Frank Stowers to be appointed to succeed the defendant as guardian. On February 17, 1936, an order was made by the county court of Marshall county removing the defendant as guardian of the person and estate of said minor and directing the defendant to file his final account in said guardianship proceedings on or before March 9, 1936; and in the same order Frank Stowers was appointed guardianship of the person and estate of said minor. The proof further shows that immediately after said order was made, the said Frank Stowers qualified as such guardian and assumed the duties as guardian.

There was introduced an exhibit identified as the final account of the guardian, the same being the account

of the defendant, John Glenn, duly sworn to by the defendant, which was filed in the county court of Marshall county on March 16, 1936. In this final account the guardian set forth certain funds which had been received since the filing of the previous annual report, and asked for certain credits for disbursements which he had made, leaving a balance due to the said ward, according to said final account, in the sum of $921.24. Later upon the hearing concerning the approval of the final account, the county court found that the defendant was indebted to the minor in the sum of $7,496.58, and directed the defendant as guardian to pay said sum to Frank Stowers as successor guardian of said minor. No appeal was ever taken from this order of the county court. The findings of the court as set forth in the order were properly held inadmissible as heresay.

Frank Stowers testified that he had received no money from the defendant after the filing of his final account. That on November 29, 1937, he served a written demand on the defendant to pay over to him as guardian of said minor the sum of $7,496.58. He further testified that subsequent to the making of this formal written demand upon the defendant, the defendant still had made no payments to him as guardian of said minor, and that up to the time of the trial of this case he had never paid nor offered to pay any of the money owing to said ward.

There was also introduced in evidence proof of the sale of certain real estate from which the defendant acquired money belonging to said ward, for which no accounting had been made, in the sum of $400, in the year 1935.

At the conclusion of this testimony, the state asked and was granted permission to endorse the name of C. P. Strother on the information and to use him as a witness

in said case, which was done over the objection of the defendant. This witness was an officer of the bank at Madill where the defendant had carried his guardianship account, and his testimony was limited to an identification of the account, showing the deposits and withdrawals by the defendant as guardian during the period of his guardianship. So far as the state was concerned, his testimony was not necessary to a conviction and could only be cumulative.

As shall be later shown, the defendant did not take the witness stand, and the only defense interposed in this case is the contention of the defendant that the statute of limitations has barred any action against the defendant.

The only fact in evidence which in any manner tends to support this contention of the defendant is the bank account of the defendant, identified by the witness, Strother. Instead of being an aid to the prosecution, the testimony of the witness, Strother, injected into the case the only serious question for disposition, to wit, the statute of limitations. The bank accounts exhibited by this witness showed that the defendant had made various deposits over a long period of time but had made repeated withdrawals from this fund; but according to this record, the account was closed and no withdrawal of funds had been made by the defendant during the three years immediately preceding the filing of the criminal complaint, except for certain items which were set forth in the final account and which admittedly were for the benefit of the ward. These items consisted of one $150 check payable to Stowers as successor guardian, pursuant to the order of the court, pending the filing of the final account, and two checks in the sum of $25 each for groceries for the ward.

It has been the uniform holding of this court that the matter of permitting the county attorney to endorse

the name of an additional witness on the information, even after the trial has begun, is a matter addressed to the sound discretion of the trial court, and that this court will not interfere with the action of the trial court unless the record clearly shows an abuse of discretion. Heglin v. State, 56 Okla. Cr. 364, 40 P. 2d 41; Stockton v. State, 5 Okla. Cr. 310, 114 P. 626; Vance v. Territory, 3 Okla. Cr. 208, 105 P. 307.

When this man was called as a witness, the defendant asked the court for a reasonable time to talk to the witness to ascertain the facts about which the witness intended to testify. In accordance with this request, the court gave the defendant and his counsel 25 minutes to talk to the witness. Under the record, since the testimony given by this witness was favorable to the defense of the defendant and could not have affected any of his substantial rights, we do not find any error in the action of the trial court in permitting the witness to be used.

There was no effort made by the defendant at the close of the witness' testimony to show that they had been surprised in any particular manner or that his testimony was of such a nature that it would require a postponement of the trial to enable them to prepare to defend against the evidence shown by this witness. For this additional reason, even though the defendant did formally ask for a continuance because of the introduction of this evidence, the court did not err in denying this request.

When the case was called for trial, the defendant, through his counsel and in the absence of the defendant, filed a motion for continuance because of the illness of the defendant. A doctor testified in support of this motion that he had examined the defendant that morning and found him suffering from nervous indigestion, and that

under ordinary circumstances it would be the following day before he could proceed with the trial. That the defendant did not have any temperature and that the fact that he was charged with a crime had probably tended to make him very nervous. After this testimony was introduced, the court postponed the hearing until 1:30 on that day, and directed counsel to have the defendant in court at that time, ready to proceed with the trial. At 1:30 the defendant appeared in court and through his counsel again asked that the case be continued because of the illness of the defendant. One of the counsel for the defendant, Mr. Newman, suggested that they proceed to select the jury that afternoon, at which time the court made this ruling:

"By the Court: I think Judge Newman's suggestion is proper. We will proceed. I am not going to force this man to sit there when he is not able. We will go ahead and get the jury and get the case started, and then if Mr. Glenn is not feeling like it, we can take a recess. You are entitled to have all the accommodation that I can allow you. I will not continue this case. I will try it. We must get rid of it. We will go ahead and get the jury and Mr. Glenn, if you need to from time to time, and if you feel like it, that you have to get out, why you let me know, and I will accommodate you. Tell the jury to come in, the motion will be overruled."

After the jury was impaneled and sworn to try the case, a short recess was taken. At the conclusion of the recess, without any objection on the part of the defendant, the state proceeded with the introduction of their evidence. Later in the afternoon some legal questions arose during the trial of the case, and the court adjourned court until the following morning to allow counsel time to present certain authorities to the court upon legal questions which had arisen and to which the objection of the defendant was later sustained by the court. These matters,

not being admitted in evidence and not going before the jury for their consideration, are not included in the record and not before this court on appeal. After the state commenced the introduction of their evidence, there was no further request by the defendant for a continuance or recess on account of his sickness.

In Nix v. State, 20 Okla. Cr. 373, 202 P. 1042, 26 A.L.R. 1053, this court held that continuances based on mental or physical condition of accused or the application therefor are addressed to the discretion of the trial court, and the court may properly deny a continuance asked on such ground in the absence of a showing that proceeding with the trial will operate to the substantial prejudice of the accused or endanger his life or health. Morrison v. State, 35 Okla. Cr. 311, 250 P. 543; Cole v. State, 46 Okla. Cr. 365, 287 P. 782; Murphy v. State, supra.

It is evident that there was no abuse of discretion in overruling the motion for a continuance.

Lastly, it is contended that the court erred in refusing to give the jury certain instructions requested by the defendant. This assignment of error is directed to the proposition that the prosecution of the defendant is barred by the statute of limitations.

The defendant requested several instructions concerning the statute of limitations, each of which would have had the effect of instructing the jury to have returned a verdict of not guilty for the reason that the proof of the state showed that the criminal action was barred by the statute of limitations.

The court gave the following instructions:

"The exact time the offense is alleged to have been committed is immaterial. Proof of the commission of the offense at any time within three years prior to the 28th

day of January, 1939, the date of the filing of the complaint herein, is sufficient as to the time."

The defendant urges that the case of Synnott v. State, 38 Okla. Cr. 281, 260 P. 517, is identical with the facts in the instant case, and should control in the disposition of this question. In the Synnott Case, the defendant was appointed guardian on November 26, 1920, and as such guardian received $1,330 of his ward's money. In December, 1920, these funds were used to purchase stock in a company, which stock was taken in the name of the guardian. The complaint was filed February 9, 1925. This court held that the proof of the state affirmatively showed the conversion of funds to the guardian's own use more than three years prior to the filing of the complaint and was, therefore, barred by the statute of limitations.

In this case there is no such similar proof by the state.

The state shows withdrawals of funds from the bank account of the guardian at various intervals, but it is not shown what disposition was made of these moneys. The defendant did not testify and offered no proof to show that these withdrawals were conversions to the use and benefit of the defendant. The defendant as guardian was under no order of the court nor obligation in any manner to keep the funds in a certain bank or to keep them in any bank.

Under section 1436, O. S. 1931, 58 Okla. St. Ann. § 776, every guardian appointed in the State of Oklahoma accepts his appointment as guardian under certain conditions named in said statute, among which it is provided that the guardian shall: "render an account on oath of the property, estate and moneys of the ward in his hands, * * * and of the management and disposition of the same, * * * and at the expiration of his trust to settle his ac-

counts with the county judge, or with the ward, if he be of full age, or his legal representatives, and to pay over and deliver all the estate, moneys * * * remaining in his hands, or due from him on such settlement, to the person who is lawfully entitled thereto."

There is nothing in the record to show that the guardian was obligated to keep the funds of the ward in any bank. His obligation under the trust which he assumed was to faithfully conserve the estate of said ward and to pay over to his legal representative, after he was discharged as guardian, the moneys and estate in his hands. It is earnestly contended by the defendant that since the bank account identified by the witness, Strother, was admitted in evidence and that the last unexplained withdrawal in said account occurred in December, 1935, that that date should be used as the date from which to compute the running of the statute of limitations. However, the state does not show the disposition of the funds as was done in the Synnott Case. If the state had shown that the defendant withdrew the funds in December, 1935, and had used them in buying stock in his own name or for some other purpose inconsistent with the best interests of the ward and for the private interest of the guardian, then he would have a comparable situation to the facts as shown in the Synnott Case.

There are no Oklahoma cases where the factual situation is parallel to the case at bar. One of the closest cases in point is the case of Waide v. State, 13 Okla. Cr. 165, 162 P. 1139, 1141, which case was reversed because of the failure of the state to prove the corpus delicti; that is, the state wholly failed to prove any embezzlement.

However, in that case the court used the following language:

"It is essential to the legal conviction of the defendant in this case of the offense of the embezzlement charged

that the money alleged to have been embezzled belonged to the estate of his ward, and came into his hands as guardian of said ward, and that the said money was misappropriated or was used in some way other that in the due and lawful exercise of his trust as guardian. * * *

"We are of the opinion, and so hold, that the trial court did not err in admitting in evidence the records of the county court showing the application of the defendant for the sale of the lands of his ward, the order to sell the same, the report of the sale of said lands, and the confirmation of said sale, together with the said report of the defendant of his receipts and disbursements as such guardian, and that by said records it was made to appear beyond a reasonable doubt that the money alleged to have been embezzled came into the hands of the guardian for the use of said ward, which it was his duty not to convert to any purpose other than in the lawful exercise of his trust as such guardian.

"The uncontradicted evidence also shows that no adjudication of said report was made by the county court, that the defendant was not removed as guardian, or that any one having authority so to do ever made a demand on the defendant for the payment of said funds or any part thereof, and that the defendant did not properly respond to such demand if made. Indeed, so far as is shown by any evidence in the case, the money alleged to have been embezzled or any part thereof is not shown to have been in any manner used or disposed of by the defendant, and the confession insisted upon by the state as contained in the said transcript of the examination of defendant by the county judge was improperly admitted in evidence, even if there was any evidence therein tending to show the commission of the crime charged, until other evidence than such confessions had been introduced of the corpus delicti.

"Defendant did not testify in his own behalf, and, so far as the evidence in this case discloses, all the money alleged to have been embezzled by him may have been at the time of his trial and conviction in defendant's hands or on deposit in some safe place subject to his order."

By inference it follows that if the defendant in the Waide Case had been removed as guardian and a demand was made for payment of the funds to the person lawfully entitled thereto and payment was refused, that such circumstances would have been sufficient to support the conviction. The preliminary complaint was filed herein on the 28th day of January, 1939. On March 16, 1936, and within three years prior to filing of the complaint, the defendant filed his final account, duly sworn to by the defendant, in which he states that he has a balance on hand due to the said Indian ward in the sum of $921.24. Although the proof shows a much larger sum owing to the ward, it is this amount that he is charged with embezzleing in the information filed herein. His successor as guardian under the statutes of Oklahoma was the person to whom he was under obligation to pay this money. A written formal, demand was made on the defendant for payment, and payment was refused, and up to the time of the trial no payment of this balance was ever made nor any part thereof.

This prosecution was instituted under the provisions of section 2043, O. S. 1931, 21 Okla. St. Ann. § 1454, which is as follows:

"If any person being a trustee, banker, merchant, broker, attorney, agent, assignee in trust, executor, administrator or collector, or being otherwise entrusted with or having in his control property for the use of any other person, or for any public or benevolent purpose, fraudulently appropriates it to any use or purpose not in the due and lawful execution of his trust, or secretes it with a fraudulent intent to appropriate it to such use or purpose, he is guilty of embezzlement."

It is apparent that under the provisions of section 1436, supra, the defendant in the lawful execution of his trust became obligated to pay to his successor as guardian

the sum acknowledged by the defendant in his final account to be due to said ward, and any other sum actually owing to said minor, and his failure upon demand so to do constitutes an act of embezzlement.

In the case of Blake v. State, 12 Okla. Cr. 549, 160 P. 30, L.R.A. 1917B, 1261, it is held:

"A fraudulent conversion is an essential element of the crime of embezzlement, and such conversion must be shown by proof that the embezzler appropriated the money to his own personal use or that he placed it to some other use than the purpose for which it was received by him, or that he failed to account for and pay over the same on proper and lawful demand."

See, also, Choate v. State, 12 Okla. Cr. 560, 160 P. 34, L.R.A. 1917A, 1287.

In the case of Colvin v. State, 127 Ind. 403, 26 N. E. 888, it is stated:

"An information for embezzlement, which charges that defendant, as guardian, collected certain moneys of his ward at a certain time, and that at a certain subsequent time the ward, having meanwhile become of age, demanded an accounting and payment, but that the guardian failed and refused to make payment, and converted the money to his own use, is sufficient where the last-mentioned date is within the period of limitation though the first date is not."

The theory of the defendant is based upon the fact that the bank account which was introduced in evidence shows a continuous withdrawal of funds throughout the guardianship, but none for more than three years prior to filing of the complaint. In the eyes of the law these withdrawals are only circumstances which could be considered, together with other facts and circumstances, which taken together might be sufficient to show an unlawful

conversion. The act of withdrawing the funds on deposit, standing alone, is not a criminal act, and by itself does not show a criminal intent to embezzle the money. He may have intended to deposit the money in some other bank or to invest it in safe securities. The checks written by the defendant in making the withdrawals were evidently not available to the state, and were not introduced in evidence. If the only proof the state had introduced had been the bank account showing the deposits and withdrawals, of course, the case would have had to have been dismissed for lack of proof of the corpus delicti. The state had already established a prima facie case of embezzlement against the defendant before the introduction of the testimony of the witness, Strother.

Since, as stated above, the withdrawals, standing alone, would not have been sufficient to show an unlawful conversion, the running of the statute of limitations does not begin from the date of the last unexplained withdrawal of the funds.

It is our opinion in the instant case, where no specific act of conversion to his own use is shown by the state, that the statute of limitations commences to run at the time the defendant was removed as guardian and Frank Stowers was appointed to succeed him as guardian of the Indian minor. That was the date which, in accordance with the statutes and the trust obligation assumed by the defendant, he became obligated to pay the legal representative of said minor the funds which he showed by his final account to be due to said ward.

In making this ruling, we are not overruling Synnott v. State, supra; and if the evidence in this case had showed that on a specific date a conversion of funds was made to the use and benefit of the defendant or to a purpose not consistent with his obligations under the trust agreement

as guardian, then the statute of limitations would have commenced to have run from the specific date, regardless of the fact that the conversion might not have become known to the ward or his legal representative until after the criminal action against the guardian had become barred by reason of the statute of limitations. The instruction given by the court was proper under the record.

There are other assignments in the petition in error which were not briefed and are not of sufficient merit to require discussion.

Here the proof of guilt is conclusive. If the defendant were given a new trial, no reasonable jury under this evidence could do other than find the defendant guilty.

The defendant was a former sheriff of Marshall county. A large number of the best citizens of that county, including the former county attorney who filed the charge of embezzlement, testified to the good character of the defendant. It is evident that defendant has many friends and that he has a good reputation as an honest, lawabiding citizen in that county. The surety on defendant's bond has settled with the guardian for their liability for the alleged shortage. The jury, in passing upon the case, could not agree upon the punishment which should be given, and the same was left to the judgment of the trial court. The punishment could have been as low as one day or as high as five years in the State Penitentiary. The trial court in the exercise of his judgment sentenced the defendant to three years in the State Penitentiary. In consideration of the age of the defendant and the excellent reputation he has enjoyed in the past, including his years of service as a peace officer, we feel that the interests of justice will be met by reducing the sentence imposed upon the defendant from three years in the State Penitentiary to a term of one year in the State Penitentiary.

It is therefore ordered that the judgment of the district court of Marshall county be modified by reducing the sentence assessed against the defendant from three years in the State Penitentiary to a term of one year in the State Penitentiary, and the judgment and sentence, as thus modified, is hereby affirmed.

BAREFOOT, P. J., concurs. DOYLE, J., absent.