**Rubin SHETSKY, Plaintiff in Error,**

v.

**The STATE of Oklahoma, Defendant in Error.**

No. A–12212.

Criminal Court of Appeals of Oklahoma.

Oct. 19, 1955.

Rehearing Denied Nov. 23, 1955.

See also 281 P.2d 769; 290 P.2d 158.

Elmore A. Page, Tulsa, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Sam H. Lattimore, Asst. Atty. Gen., for defendant in error.

POWELL, Judge.

The plaintiff in error, Rubin Shetsky, hereinafter referred to as defendant, Frank James Ellsworth and Charles Claire Taylor, were jointly charged in the district court of Tulsa County with the crime of second degree burglary by in the nighttime breaking and entering a certain store in Tulsa, and taking, stealing and carrying away certain personal property. The defendant was tried separately from his co-defendants before a jury, was found guilty and his punishment fixed at imprisonment in the state penitentiary at McAlester for a period of six years. Appeal has been perfected to this court.

Perhaps a clearer understanding of the propositions advanced for reversal may occur if certain facts disclosed by the record are first set out.

Officer B. W. Biggs of the Tulsa Police Department testified that he was driving east on Twenty-first Street in Tulsa, in his patrol car, so marked, and equipped with a whirling red light, short wave radio, etc., at about 3 A.M. on April 19, 1954, and as he approached Iverson's store located at 1650 East Twenty-first Street, he noticed a green Chrysler four-door automobile parked in front of the store, on the off-street parking. The turtle back was up, and he noticed that it was crammed full of some kind of goods or articles, not immediately identifiable. About ten seconds thereafter the car commenced speeding away, soon reaching a rate of eighty to ninety miles an hour. The officer gave chase, and using his short wave radio requested aid from other officers cruising in the vicinity. In the meantime officer Biggs turned on his red light and the siren and made every effort to stop the speeding car. He was fired upon from the left front door of the pursued car. He could from time to time see flashes from the window of that door. As the pursuing and pursued cars approached Harvard Street, going east on Twenty-first, witness noticed a police car parked in the center of the intersection. Witness, due to his speed, ran through the driveway of a Texaco Filling Station on the corner, and as he did so observed the Chrysler he was pursuing parked north past the intersection and on the curb of Harvard. He focused his lights on that car, and as he stopped he heard further gunshots and he fired two shots into the Chrysler, when the occupants failed to come out after he called to them. He saw officers Hicks and Norman approaching the Chrysler. He then observed one man get out of the left front door of the Chrysler with his hands up. This man was identified as Ellsworth. He had been shot in a finger. A man later found to be Charles Claire Taylor next got out of the Chrysler from the front right hand door, and then

the defendant Shetsky got out. It was later discovered that the back seat of the Chrysler was loaded with women's dresses and furs, as was the turtle back, which was so crammed that the lid was completely up. The men were searched but no firearms were found on them. Officer Biggs observed three bullet holes in the Chrysler and where a load of buckshot had hit the furs. The other officers took three guns from the Chrysler, two from under the front seat, and one from the back seat.

Officer Jim Norman testified to receiving a call for help from officer Biggs and said that he and officer Hicks on the morning of April 19, 1954, joined in the chase after a Chrysler car with turtle back up and blocked its progress at Twenty-first and Harvard. When the Chrysler appeared it cut through a Texaco filling station driveway, and officer Hicks by use of a shotgun, shot down the two right tires. He said the car approached at a speed of seventy to eighty miles an hour. As it went through the filling station driveway, he said he was fired upon from the driver's side of the Chrysler. Three occupants of the car were eventually handcuffed and he saw a .38 Smith & Wesson, and a .44 Smith & Wesson gun taken from under the front seat, and found a box of .38 shells on the front seat, with a number of shells missing. He observed ladies' expensive dresses and furs and radios in the Chrysler, also certain tire tools in the car, some gloves, a crow bar, large screw drivers, and a long silver tire tool, and two metal bolt cutters.

Witness further said that after the arrest of the defendant and his companions, he and other officers went to Iverson's store on Twenty-first Street and found the front door had been broken open by use of heavy metal tools; that the wood was dented, and part of it was on the floor in front of the door.

Officer Hicks testified substantially as his partner, officer Norman. He said that he shot down the two right tires of the Chrysler as it avoided their road-block by cutting through the filling station driveway at Twenty-first and Harvard. He said that after the Chrysler was brought to a stop about seventy-five yards north on Harvard,

he observed shots coming from both the left and right sides of the car, and that a bullet went past one of his ears; that he fired a shotgun blast in the rear of the Chrysler and the occupants commenced yelling and came out with their hands up. The defendant Shetsky was the last one to get out. Witness testified to finding a gun down in the clothing in the back seat of the car, and in the cylinder found four live shells and two that had been fired.

Other witnesses for the state testified that certain tools found in the Chrysler fitted into the dents and impressions on the front door of Iverson's store that had been pried open.

Paul D. Iverson testified to his store being burglarized on the night of April 18, or morning of the 19th, 1954. He had been at the store during the afternoon of the 18th, which was Sunday. He identified the furs and clothing found in the Chrysler car as his property, and placed a value of $31,500 on the stolen items.

The state rested and the court overruled a demurrer interposed by the defendant, and overruled a motion for a directed verdict of not guilty. Whereupon counsel for the defendant made his opening statement. He told the jury that the evidence on the part of the defense would rest solely on the testimony of the defendant, who would testify that he was "rum drunk" and did not remember all of the circumstances. "That at the time this incident took place defendant was sitting in the car, either asleep or semi-asleep, and that he was not a party to this action of any kind, insofar as any intent on his part is concerned."

Following the opening statement counsel conferred with the court at the bench, as his client had decided not to testify *and he wanted to show by physicians why the defendant should not testify.* A continuance *was not asked.* The court heard Dr. Safety-First, a heart specialist, and Dr. Robertson, the county doctor who had attended the defendant. After hearing the testimony of the physicians the court said: "Well, the court will observe for the purpose of the record that when the case started at 9:30 yesterday [March 15] morning *there was no application, either written or oral, pre-*

*sented to the court for a postponement of this cause, and there is none now before the court."* (Emphasis supplied.)

After further questioning of Dr. Robertson by counsel for defendant and the court, counsel stated, out of the presence of the jury: "Under those circumstances I again would like to offer this before the jury as a reason he will not testify and will be unable to testify. I don't feel, under the doctors' statements and diagnosis, it would be safe for this defendant to testify in view of the fact, though it might be remote, it could cause his death."

Thereupon the court said:

"The court finds that such an examination as the court would permit would not be of any greater stress and emotion upon the defendant than the last day and a half of the trial of this case, and holds as a matter of law his present physical condition is of no concern of the jury and that the choice is entirely up to the defendant and his counsel whether he takes the witness stand or not. If he does not, there will be no reference to the jury on either side as to why he did not."

The jury was called in and the court directed defense counsel to call his first witness, whereupon counsel announced: "Defendant rests", and the case was submitted to the jury with the results already recited.

The record further reflects that the preliminary complaint in the within case was filed on April 19, 1954; that on April 20, 1954 the defendant Shetsky appeared before the common pleas judge and entered a plea of not guilty. The case was set for preliminary hearing for May 11, 1954 and the defendant was released on bond. The case was passed two times, and finally the preliminary hearing was had on June 18, 1954, and the defendant was bound over to the district court, and released on bond. On June 21, 1954 an information charging the defendant with second degree burglary was filed in the district court of Tulsa County, and the defendant was arraigned and made bond to appear for trial on September 28, 1954. On that date his case was passed to the next jury docket, and eventually set for

February 7, 1955. The record is silent as to why the case was passed. The record reflects that the defendant claimed in an affidavit for writ of habeas corpus to have suffered a heart attack in Chicago, his home, on February 4, 1955, and that on February 7, 1955, over the protest of his physician, he returned to Tulsa by plane and came under the care of a physician and was unable to appear in the district court of Tulsa County on February 7, 1955, and Judge W. Lee Johnson, district judge, passed said cause from day to day, and on February 17, 1955 requested defendant's doctor to appear and show cause whether or not petitioner was physically able for trial. Thereafter said cause was continued and reset for March 8, 1955.

In the meantime, on February 13, 1955, the county attorney filed application for increase in the bond of defendant on the ground that defendant was a non-resident of Oklahoma, and had, by his own admission, removed himself from the state while on bail, contrary to law, etc. The matter was set for hearing for February 24, 1955, and on February 22, 1955 defendant sought to obtain a writ of habeas corpus from this court, which was denied for the reasons set out in the case, In re Shetsky, Okl.Cr., 281 P.2d 769, one reason being that petitioner was not incarcerated and his counsel disclaimed knowing his whereabouts. This court also refused to assume jurisdiction of an application to restrain Judge W. Lee Johnson from trying the case.

Judge Johnson on February 24, 1955 sustained the application of the county attorney to increase the bond of the defendant and issued a bench warrant for defendant's arrest. On March 1, 1955 defendant gave himself up and filed in the district court of Tulsa County an application for disqualification of Judge Johnson to try his case. This application was heard on March 3, 1955, and overruled.

On March 8, 1955 counsel for the defendant filed a second application for a continuance on account of the alleged poor physical condition of defendant, and the claim that he had suffered a heart attack. The motion came on for hearing on March 9, 1955

and counsel for the defendant stated to the court:

"I would like to withdraw my application and let any further proceedings had thereon be under your direction.

"The Court: You are withdrawing your application for a postponement?

"Mr. Page: Continuance, and insofar as further proceedings as to why the defendant isn't in court at this time."

The court, nevertheless, called Dr. Gerald G. Robertson, the county physician, who had been treating defendant, and also called Dr. N. W. Dodd, defendant's personal physician. The case was set for trial for March 15, 1955. The defendant was brought into the court room on a stretcher and attended by a nurse, a physician and an ambulance driver. The pertinent further proceedings have already been recited.

Appellant first urges for reversal, "That defendant was denied a fair and impartial trial due to personal prejudice of the Honorable trial court and which materially aggravated and affected the final judgment rendered against him."

We have carefully read the record to discover the basis for the effort of counsel to persuade the trial judge to disqualify. We note one place where counsel said, in open court: "So far as fairness is concerned, I don't think there would be a fairer judge in the State, but I do feel you have somewhat become personally interested in the matter, and because of that, I felt that I was justified in asking such action as I did."

We find nothing in the evidence presented on hearing of the motion to disqualify that would require Judge Johnson to do so. In fact, it was developed during the oral argument of this case and in brief filed, that when the assault with intent to kill case arising out of the within matter, came on for trial, counsel waived a jury and tried the case before the court, and the court, referring to the fact that defendant had already received a sentence of six years, found him guilty only of the included offense of assault with a dangerous weapon, and imposed a sentence of only two years in the penitentiary.

It is urged "That the court erred in admitting testimony of a separate and distinct offense, over the objections of the defendant."

The facts concerning the attempt of officer Biggs to arrest defendant and his companions have already been recited. It is clear that the officer had good reason to investigate the unusual circumstances looming up as he observed the green Chrysler car in question and subsequent events were sufficient to cause him to believe that a felony had been committed by the occupants of the Chrysler car. The car sped away, the occupants disregarding and refusing to acquiesce in the efforts of the officers to have them submit to his investigation.

We conclude that the proof involving the attempt to arrest defendant and his flight and the subsequent firing of shots from the speeding car, the finding of weapons therein, were all so closely interwoven with the proof of the burglary itself and with the finding of the stolen goods in defendant's car as to be a part of the res gestae, and therefore admissible. Fairris v. State, Okl.Cr., 287 P.2d 708. The flight and firing on the officers in a plainly marked police car would have a bearing on his consciousness of guilt.

Counsel objected only once to the testimony of one of the three officers who testified with reference to the firing of the shots. Counsel at no time requested any instruction or admonition to the jury limiting the effect of the proof now complained of. The following cases are analogous: Quinn v. State, 52 Okl.Cr. 81, 2 P.2d 970, and cases cited; People v. Flannelly, 128 Cal. 83, 60 P. 670.

It is next contended "That the county attorney of Tulsa County, in his opening statement and closing argument to the jury used conduct calculated to inflame the minds of the jurors and to arouse their prejudice or passion against him."

The above proposition is bottomed principally upon the fact that the county attorney in his opening statement detailed the

efforts of the defendant and his companions to escape after officer Biggs observed the car loaded with some kind of goods and articles and attempted an investigation, and detailed the happenings up to the arrest of the defendant, and stated the kind and value of stolen goods then found in his possession, etc.

■ We find no reversible error either in the opening statement of the county attorney, or in his closing argument.

One proposition is advanced that has required considerable study, and being, "That defendant was denied a fair and impartial trial under Article II, § 20 of the Constitution of the State of Oklahoma [in that] the defendant avers that he was forced to trial when he was physically unable to testify in his own defense or to assist his counsel in such defense."

The constitutional provision in question specifies, among other things, that a person accused of crime "shall have the right to be heard by himself and counsel". And our criminal code provides, 22 O.S.1951 § 584, "When an indictment or information is called for trial, or at any time previous thereto, the court may, upon sufficient cause shown by either party, as in civil cases, direct the trial to be postponed to another day in the same or next term."

In Cole v. State, 46 Okl.Cr. 365, 287 P. 782, this court said:

"The illness of an accused which may prevent him from properly presenting his defense or rendering the assistance to counsel that he otherwise would do is generally held a reasonable ground for a continuance. A motion for a continuance because of the illness of parties is addressed to the sound discretion of the trial court— a discretion with which this court will not interfere unless it appears that it was abused to such an extent that prejudice or injury resulted therefrom."

The above case is in line with the general rule set out in 12 Am.Jur., Continuances, § 15, p. 457. There it is further stated:

"A proper showing must be made, however, and whether a continuance should be granted on the ground of illness depends on the circumstances, the determination of which rests in the sound discretion of the court."

And see Morrison v. State, 35 Okl.Cr. 311, 250 P. 543; Glenn v. State, 72 Okl.Cr. 165, 114 P.2d 192, 158 A.L.R. 1146.

■ We note that the proposition now advanced was not assigned in either the motion for new trial, or petition in error filed in this court. Of course under such circumstances, an assignment of error now advanced for the first time cannot be considered, unless the error is of a fundamental character. Washington v. State, 73 Okl. Cr. 81, 118 P.2d 267; Morrison v. State, 7 Okl.Cr. 242, 243, 123 P. 169.

■ We deem it fundamental by reason of Art. II, § 20 of the Oklahoma Constitution that a person accused of crime, in the words of the provision, "shall have the right to be heard by himself and counsel".

■ We have, therefore, examined the record with scrupulous care to determine whether this constitutional right was violated in the within case. The fact that defendant was tried while resting on a cot and attended by a physician, nurse and ambulance driver would not per se constitute error. Morrison v. State, 35 Okl. Cr. 311, 250 P. 543. The question for the trial court to have determined was whether forcing the defendant to trial would "operate to the substantial prejudice of the accused or endanger his life or health." Glenn v. State, supra [72 Okl.Cr. 165, 114 P.2d 198]. The burden was on counsel for defendant to so show.

On February 17, 1955, as we have seen, the record discloses a hearing was had before the district judge on a motion for a continuance, but the motion in question is not reflected in the record, though the testimony of defendant's physician, Dr. N. W. Dodd, is shown. He stated that Mr. Shetsky called on him for the first time on February 7, 1955; that Shetsky was hospitalized at Hillcrest Hospital, Tulsa; that witness had made three electrocardiograms

and that "My first impression was that it was coronary occlusion." He prescribed rest in bed and oxygen. Witness further stated that from the history of his patient as given by Shetsky that he had had previous occlusions but there was no permanent damage from them shown; that there was an occlusion taking place a week prior to the hearing but it had not then been demonstrated whether or not there was permanent damage. He stated that defendant's blood pressure had returned to normal. The doctor thought that it would not be advisable for him to appear in court at that time. The court thereupon continued the case to March 8, 1955.

In an unverified motion to disqualify Judge Johnson, filed March 1, 1955, it had been set out that the defendant had suffered a heart attack at his home in Chicago on or about February 4, 1955, and was confined to bed, but that on February 7, 1955, in complete disregard of his doctor's advice he arose from his bed and proceeded to Tulsa by airplane in order to appear in court.

The above allegations were not set forth in a petition for continuance filed on March 8, 1955. *No proof was ever offered to sustain* such allegations. The motion of March 8, contained the following allegations:

"The said defendant respectfully shows that on or about the 2d day of March, 1955, while incarcerated in the Tulsa County Jail, pursuant to posting bond in said cases, he was directed by the Sheriff of Tulsa County to the Offices of Dr. Safety First, a heart specialist, for a physical examination and check of said defendant's purported heart ailment. That as a result of such examination the said defendant was removed on the 3d day of March, 1955, to Hillcrest Hospital where he is now confined under guard; that the medical diagnosis of said defendant's physical condition reflects that he is suffering from an advanced heart ailment, and that such physical condition is so acute that he is required to remain bedfast and in complete quiet, free from any collateral disturbances

of any nature or kind and free from emotional involvement. It being further shown that under present medical diagnosis said defendant will be required to remain bedfast for several weeks in the future under medical attention, treatment and supervision.

"The defendant further showing that his motion for a continuance is predicated solely due to his present physical condition and is not a means of avoiding trial in said cases, as said defendant fully intends to defend himself in such cases at such time as he is physically able to appear.

"Wherefore, defendant moves the court for a continuance of the trial of said cases until such time as he is physically able to personally appear therein."

The above motion for continuance came on for hearing on March 9, 1955, and counsel for defendant announced:

"I would like to withdraw my application and let any further proceedings had thereon be under your direction.

"The Court: You are withdrawing your application for postponement?

"Mr. Page: Continuance, and insofar as further proceedings as to why the defendant isn't in court at this time."

The trial judge then questioned Dr. N. W. Dodd and determined that he had seen defendant professionally over a period of about two weeks, and that within a few hours after Dr. Dodd had first testified on February 17, 1955 defendant left the Hillcrest Hospital and ten days later defendant was at the residence of a Mr. King, where witness visited him. Witness stated that defendant was not presently his patient.

Thereupon the court reset the case for March 15, 1955.

No further effort was made to secure a continuance and counsel offered no evidence after the February 17 hearing in support of the inability of his client to testify. It was not for the purpose of a continuance that counsel for defendant wanted one Dr.

Safety First to testify after the State had closed its case, but for the purpose of explaining to the jury the reason the defendant had decided not to testify after his counsel in opening statement had advised the jury that the defendant would testify, and had outlined to them what his testimony would be. This situation and the fact of waiver on March 9, of the motion for continuance filed March 8, cannot be overlooked, nor can the fact of defendant's plane flight and maneuvering around Tulsa be overlooked in considering the state of his physical condition. Our problem would be extremely difficult if defendant had sought a continuance. The court in absence of a motion for continuance, supported by evidence, had to support the idea that a continuance should be granted, principally on bare allegations, without proof, that defendant had suffered a coronary thrombosis attack on February 4, 1955. The trial was about six weeks after such alleged happening, and defendant was able to take a plane ride and hide out from the officers. In considering the propriety of continuing the case on his own initiative, after the defendant announced ready for trial and the state had introduced its evidence, the court had to take into consideration the fact that at any future trial there might well arise the question of double jeopardy. At any rate, the court from the facts before it, did not continue the case on its own initiative. Was that error?

From the lack of evidence in the record, we are unable to determine whether or not at the time of the trial on March 15, 1955 the defendant was or was not in such poor physical condition that a trial would operate to his substantial prejudice or endanger his life or health. We think that the defendant did not make the proper showing required of him. The burden rested on him. If he in truth suffered a coronary thrombosis attack on February 4, 1955, then it would appear that the airplane trip from Chicago to Tulsa on February 7, 1955 would have proven fatal. At most the attack must have been most mild. His Tulsa physician said that an electrocardiogram showed prior attacks from which he had completely recovered, and showed a recent attack.

The writer suffered a severe coronary thrombosis attack and was confined to bed in a hospital for seven weeks, and then seven weeks at home in and out of bed, convalescing. About two years later, after discharge by his physician, feeling badly, he visited a well-known heart specialist for a complete examination, including an electrocardiogram, and was immediately put to bed by the specialist, and it was not until after the specialist had examined the prior electrocardiogram taken at the time and after the known attack, that he was convinced that the writer had not suffered a new attack.

If in the within case proper proof appeared in the record to support the contention that defendant had actually suffered a severe coronary thrombosis attack within six weeks prior to trial, we would by such circumstances, be forced to reverse this case for a new trial, but under the circumstances of proof recounted, we cannot say that the court erred in trying the defendant at the time he did. The evidence of his guilt, it would appear, was such that if he were tried a hundred times, jurors respecting their oaths could do nothing but enter a verdict of guilty of the crime charged.

The judgment appealed from is affirmed.

JONES, P. J., and BRETT, J., concur.

### On Petition for Rehearing

POWELL, Judge.

In petition for rehearing it is urged that the arrest of the defendant Shetsky was unlawful and that the evidence of officer Biggs should have been stricken and suppressed as requested by counsel; that this question was overlooked by this court and should be squarely passed upon. This was not urged in oral argument or in defendant's brief but will be considered at this time.

It will be noted from the opinion that officer Biggs in the performance of

his duties as an officer of the Tulsa police department was patrolling the streets of Tulsa in the nighttime (about 3 A.M.) in a patrol car, so marked, and equipped with a whirling red light, short wave radio, etc., and as he approached Iverson's store located at 1650 East Twenty-first Street, he noticed a green Chrysler four-door automobile parked in front of the store, in the off-street parking. The turtle back was up, and he noticed that the rear of the car was crammed full of some kind of goods or articles not immediately indentifiable. Thus the officer was confronted by an unusual situation. At this point he did not have grounds to make an arrest, but it was certainly within the province of his duties to require the operators of the vehicle to identify themselves under such peculiar circumstances. The officer was in a place where he had a right to be, at the time he was confronted with the facts stated. The occupants of the vehicle did not take time to close the turtle back of their car, but within ten seconds commenced to speed away. The officer had a right to follow and observe. Griffin v. State, 90 Okl.Cr. 90, 210 P.2d 671. He did just that. The defendant and his companions soon had their car going at a high rate of speed, which would be dangerous to the travelling public, a fact indicating a violation of the rules of the road as well as municipal speed laws. They were making every effort to dodge and escape having to identify themselves and of course the discovery of the loot protruding from the turtle back of their automobile. Under such circumstances the officer radioed for help. The facts, we conclude justified this. And as stated, officer Biggs was fired upon by the occupants of the fleeing vehicle. Such fact justified officer Biggs in closing in for an arrest.

But before officer Biggs caught up with the green Chrysler in question, the occupants had fired upon officers Norman and Hicks who had placed their car across the intersection of Twenty-first Street and Harvard.

After the Chrysler was forced to stop by reason of the two right tires being shot down, the defendant and his companions got out of the Chrysler with their hands up. The officers could see that the goods with which the turtle back of the Chrysler was stuffed consisted of expensive furs. The officers were justified in closing in on the Chrysler and arresting the occupants for speeding and for shooting with intent to kill, etc. Subsequently they were justified in filing charges of burglary in the second degree by reason of the facts set out in our opinion in this case.

If such was not the law, officers employed to protect the lives and property of the public would be so handicapped and hedged in as to render impotent their efforts at law enforcement. No honest citizen under the circumstances as in this case could object to identifying himself by his driver's license, social security card, or some other means. Where he seeks escape from this reasonable procedure and violates the law in doing so, even firing upon the officers in a plainly marked police car, such conduct justifies and requires his arrest.

The petition for rehearing must be and the same is denied, and the Clerk of this court is directed to issue mandate forthwith.

JONES, P. J., and BRETT, J., concur.