William Dudley HUGHES, a/k/a William Wallis, a/k/a Square Bill, a/k/a Crazy Bill, Appellant,

v.

STATE of Oklahoma, Appellee.

No. F–86–671.

Court of Criminal Appeals of Oklahoma.

Sept. 27, 1988.

Pete Gelvin, Asst. Public Defender, Oklahoma City, for appellant.

Robert H. Henry, Atty. Gen., M. Caroline Emerson, Asst. Atty. Gen., Marc Bovos, Legal Intern, Oklahoma City, for appellee.

## OPINION

BUSSEY, Judge:

Appellant, William Dudley Hughes, was convicted in the District Court of Oklahoma County, Case No. CRF–85–904, of Assault and Battery with a Dangerous Weapon After Former Conviction of Two or More Felonies. He was sentenced to imprisonment for one-hundred and ten (110) years and brings this appeal.

The facts disclosed by the record reveal that on February 17, 1985, Ray March was working as a security guard at a hotel in

Oklahoma City. He heard a loud noise from one of the rooms and stopped to investigate. A man, later identified as appellant, looked out the window and then came to the door. March asked appellant and another man who was in the room to step out. March then asked them to accompany him to the hotel office, and the three started walking down the sidewalk. As March stopped to close the door to the hotel room, the two men broke into a run, drew weapons, and fired their guns at March, striking him three times.

In his first assignment, appellant asserts that the trial court failed to exercise any discretion to determine whether his sentence should be served concurrently with a sentence received in a federal court. At the close of trial, appellant asked the trial court to "impose this sentence consecutive to [the federal sentence], and let me get this thing out of the way before I start my state time...." The trial judge responded that he had no jurisdiction in federal court, and could do nothing for appellant. Appellant raised the question once again in his sentencing hearing, and received a similar response.

Title 21 O.S.1981, § 61.2 provides:

When a defendant is sentenced in an Oklahoma state court and is also under sentence from a federal court or another state's court, the court may direct custody of the defendant be relinquished to the federal or another state's authorities and that such Oklahoma state court sentences as are imposed may run concurrently with the federal or another state's sentence imposed.

■ While the trial judge was correct in stating that he had no jurisdiction in the federal system, that did not preclude him from applying the provisions of this statute. However, we cannot find that appellant was in any way prejudiced by the trial court's failure, as he specifically requested consecutive sentencing. This was not merely incorrect terminology. Appellant clearly stated that he wanted to complete one sentence before starting the other. He may not request and obtain one form of sentencing in the trial court, change his

mind, and seek relief before this Court. This is the very essence of invited error. Finding no prejudice to appellant, this assignment must fail.

■ In his second assignment, appellant asserts that error occurred in the admission of a docket sheet during the second stage of trial. We note that the charge listed in each of the docket sheets admitted into evidence during the second stage contains the notation, "AFCF," of which appellant complains. Objection was raised to the admission of these at trial. However, the grounds of objection was the State's failure to lay a proper foundation by identifying appellant as the person reflected in those records. That objection was properly overruled by the trial court. When a specific objection is made at trial to the admission of evidence, no different objection will be considered on appeal. *Marks v. State*, 654 P.2d 652, 655 (Okl.Cr.1982). This issue was not preserved for review on appeal, and the assignment must fail.

■ In his third assignment, appellant seeks reversal of his conviction and dismissal of the charges on the ground that March's identification of appellant was tainted by impermissibly suggestive identification procedures. The record reflects that no objection was raised at trial concerning the identification procedures. Moreover, the circumstances of the pretrial identification were not so suggestive as to violate appellant's due process rights. In *Thompson v. State*, 438 P.2d 287, 288 (Okl. Cr.1968), we adopted considerations established by the Supreme Court in *United States v. Wade*, 388 U.S. 218, 241, 87 S.Ct. 1926, 1939, 18 L.Ed.2d 1149 (1967) to determine the admissibility of courtroom identifications of an accused where the pre-trial identification was made without the benefit of counsel:

Application of this test in the present context requires consideration of various factors; for example, the prior opportunity to observe the alleged criminal act, the existence of any discrepancy between any pre-lineup description and the defendant's actual description, any identification prior to lineup of another person,

the identification by picture of the defendant prior to the lineup, failure to identify the defendant on a prior occasion, and the lapse of time between the alleged act and the lineup identification. It is also relevant to consider those facts which, despite the absence of counsel, are disclosed concerning the conduct of the lineup.

Since *Thompson,* these factors have been applied to the admissibility of in-court identifications in the context of this case. *See Cooper v. State,* 599 P.2d 419, 421 (Okl.Cr. 1979).

■ In the context of the present case, we note that March observed his assailant under good lighting at close range for an adequate length of time prior to the commencement of shooting. The description he gave of his assailant prior to identifying appellant's photograph generally matches the appearance of appellant. He never identified any other person as the perpetrator. He never failed to identify appellant. The photographic identification was made on the day of the incident. None of the facts surrounding the photographic identification are such as would taint March's in-court identification and render it inherently unreliable. Thus, under all of the relevant considerations, the procedure used was adequate and this assignment must fail.

■ In his fourth assignment, appellant asserts that the trial court erred in failing to grant his request to proceed *pro se.* Indeed, it is a constitutional mandate that a defendant be allowed to proceed *pro se* where he makes a voluntary, knowing, and intelligent demand to do so. *See Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). However, the record in this case fails to disclose a sufficient demand.

■ On appeal, appellant asserts that he demanded to proceed *pro se* twice during the course of trial. His first "demand" came at the close of the State's case-in-chief. At that time, defense counsel approached the bench and disclosed to the judge that appellant sought to proceed *pro se.* In response, appellant stated,

The problem I have is I want to subpoena some witnesses. [Defense counsel] refuses to even consider it.... To go pro se is the last thing that I want to do. I know that I need an attorney. I know that I need a lawyer. I've been told that only a fool represents himself in a case. And I'm well aware of all these things. But I also know that I need to present, put witnesses on this stand. There's a great deal of conflict between [defense counsel] and myself in regards to this.

Later, he continued,

I'm not an attorney, or anything. I don't know anything about the law, other than what just through normal life experiences I've had. I've had no training. I know that I need an attorney. There's a tremendous conflict between [defense counsel] and myself. There has been since before this trial started....

Defense counsel pointed out that appellant had requested the attendance of numerous people who had no personal knowledge of the facts involved in this case. Even "Crime Stoppers" was on the list of "witnesses" to be subpoenaed. The trial judge then denied the request, holding in part,

[I]t would frustrate the administration of justice if we let him pro se it [sic] at this time. He doesn't want to pro se it [sic], number one. He wants an attorney, Mr. Hughes does, and he has an attorney. He's had two attorneys. You're the second one, and we're not going to just frustrate this trial.

We find no abuse of discretion.

■ The second "demand" came at the opening of second stage. At this time, appellant wanted to proceed on his own, but only after having an *ex parte* conference with the judge to obtain counseling on the law. The judge properly declined to enter the role of an advocate, and appellant chose not to represent himself. The trial judge stated, "Do you want to make your closing argument? I'll permit you to do so, if you want to make your closing argument." Appellant chose to have counsel represent him. Throughout this record, it

is clear that appellant did not make a demand to represent himself. We need not address the question of a need to make a "timely" demand. There was no abuse of discretion by the trial court in failing to force appellant to proceed on his own. This assignment must fail.

 In his final assignment, appellant seeks modification on the grounds that his sentence is excessive. We find that the sentence is within the limits set by the relevant statute. Under the facts and circumstances of this case, 110 years is not shocking to the conscience of this Court. Accordingly, this assignment must fail. *See, Huntley v. State,* 750 P.2d 1134, 1136 (Okl.Cr.1988).

Finding no basis for reversal or modification, the judgment and sentence of the District Court of Oklahoma County is AFFIRMED.

BRETT, P.J., and PARKS, J., concur.