James E. **SIMPSON,** Appellant,

v.

The **STATE** of Oklahoma, Appellee.

No. F–89–1335.

Court of Criminal Appeals of Oklahoma.

June 8, 1994.

Rehearing Denied July 27, 1994.

---

JAMES E. SIMPSON, Appellant, was tried by a jury in the District Court of Logan County and convicted of Count I, Sodomy (21 O.S.1981, § 886); Count II, First Degree Rape (21 O.S.Supp.1986, § 1114); Count III, Lewd Molestation (21 O.S.Supp.1985,

§ 1123); and Count IV, Exhibition of Pornography to a Minor/Solicitation of a Minor to Perform Obscene Acts (21 O.S.Supp.1984, § 1021(B)). The jury recommended he be sentenced to ten (10) years for Count I, one hundred (100) years for Count II, twenty (20) years for Count III, and thirty (30) years for Count IV. The trial court sentenced accordingly. AFFIRMED.

Brad Morelli, Guthrie, for appellant at trial.

Michael Wilson, Asst. Appellate Indigent Defender, Norman, for appellant on appeal.

Laura Austin Thomas, Marty McLaughlin, Asst. Dist. Attys., Guthrie, for State at trial.

Susan Brimer Loving, Atty. Gen. of Oklahoma, Sandra D. Howard, Asst. Atty. Gen., Chief, Criminal Div., Oklahoma City, for State on appeal.

## OPINION

LUMPKIN, Presiding Judge:

Appellant James E. Simpson was tried by a Logan County jury in case no. CRF–88–42, and convicted of Count I, Sodomy (21 O.S. 1981, § 886); Count II, First Degree Rape (21 O.S.Supp.1986, § 1114); Count III, Lewd Molestation (21 O.S.Supp.1985, § 1123); and Count IV, Exhibition of Pornography to a Minor/Solicitation of a Minor to Perform Obscene Acts (21 O.S.Supp.1984, § 1021(B)). He received sentences of ten (10) years for Count I, one hundred (100) years for Count II, twenty (20) years for Count III, and thirty (30) years for Count IV; all sentences were ordered to be served concurrently. We affirm.

■■■ The facts and issues presented in this case require the Court to analyze the historical jurisprudence of this Court, together with federal caselaw, in order to reset the plumb line previously established by our caselaw regarding the concept of fundamental error and the scope of review on appeal when an objection has not been preserved during the trial. Periodically, it is necessary to restate what has previously been enunciated regarding the procedural prerequisites for preserving error for appellate review, together with the appropriate scope of that review.

As a result of the recognition of our prior jurisprudence, we hold and restate the following: (1) Failure to object with specificity to errors alleged to have occurred at trial, thus giving the trial court an opportunity to cure the error during the course of trial, waives that error for appellate review unless the error constitutes fundamental error, i.e. plain error; (2) The concept of fundamental error is now codified in the Oklahoma Evidence Code 12 O.S.1981, § 2104, and shall hereafter be referred to as plain error; (3) Plain error only allows review of an error on appeal which was not preserved through a timely objection at the trial court, but does not automatically constitute reversible error; (4) Plain error, which allows review on appeal in the first instance, will be reviewed by the appellate court in the same manner as error which was preserved by timely objection during the trial; (5) Error preserved by timely objection during the course of trial, together with plain error reviewed for the first time on appeal, will be analyzed to determine if the error requires reversal or whether the error was harmless. In this case, we find plain error occurred, based on the failure to comply with the in camera hearing requirements set forth in 12 O.S.1991, § 2803.1. However, we find the error harmless under the facts and law set forth herein.

## I.

Appellant has not challenged the sufficiency of the evidence; therefore, an extensive recitation of facts is unnecessary. Suffice it to say that Appellant was convicted of performing the above acts with B.S., his daughter. When the daughter was eight years old and the mother was out of town attending her mother's funeral, Appellant lured B.S. to his bed, kissed her, talked her into taking off her nightgown, then talked her into sucking on his penis. He did this by telling her it was all right to do this, because her mother did the same thing. He also told B.S. not to tell anyone, that it would be their "secret." B.S. performed these oral sexual acts with Appellant on a regular basis until just before Christmas 1987, when she told her father she was tired of performing them. During this time, Appellant would show the child pictures of naked women in bondage, telling her they

might try that some time. He also showed her a pornographic film depicting women having intercourse with men, and performing oral sodomy on men. He pointed out to her how the women "deep throated" the men in the film, and talked her into trying the procedure on him. These acts would usually occur when the child's mother was asleep or gone.

B.S. grew tired of the film and attempted to discourage its use by cutting out a certain portion of the film, throwing it under the porch, and eventually telling Appellant she no longer wanted to perform the oral sexual acts. At that point, Appellant talked her into having vaginal intercourse with him, again telling her it was normal. The girl was 11 years old at this point. These acts then continued on a regular basis in various parts of the residence and in a camper which was just outside the residence. The sexual acts stopped only after B.S. saw a film at school, began talking to friends, and discovered the relationship with her father was not normal.

Acting on a search warrant, authorities found a cache of magazines showing naked women in bondage and/or being tortured. Also found was the film the child described, and a scrapbook containing individual pictures of women in bondage, being tortured, or showing their genitalia disfigured by foreign objects. They also found a picture of a naked woman on the wall above Appellant's bed.

Appellant in his first proposition points out a violation of the provisions of 12 O.S.Supp. 1986, § 2803.1, alleging no hearing was conducted outside the jury's presence to determine the reliability of the child's out-of-court statements. At trial, school psychologist Donna Powell and Department of Human Services social worker Jennifer Badger related to the jury statements B.S. made to them. The women's testimony was virtually identical, and varied only slightly from what B.S. herself testified at trial.

The State admits there is no evidence of an *in camera* hearing, but advances two arguments. It first points out that counsel failed to object to the women's testimony at the time it was offered, arguing Appellant has therefore waived the proposition for all but

fundamental error. In the alternative, the State then points out the consistencies of the women's testimony and their consistency with the child's, arguing under the circumstances of this case the error was harmless and the women's testimony merely cumulative. In support of this, the State points to uncontradicted testimony by a pediatrician the child's genitalia were more consistent with that of a married woman than an 11-year-old child, indicating chronic vaginal intercourse. Based on the consistency of the child's testimony with the women's, and evidence presented by the doctor, the State argues any error in failing to hold the *in camera* as required by 12 O.S.Supp.1986, § 2803.1 was harmless.

Appellant responds our holding in *Spears v. State*, 805 P.2d 681, 683 (Okl.Cr.1991) precludes a harmless error analysis. In *Spears*, the Appellant likewise failed to object; however, this Court held the error was fundamental, and reversed. Appellant then argues the error was not harmless under the circumstances of this case. He claims the State ignored this Court's holding in *Spears*, and implies fundamental error always necessitates reversal. This case identifies the need for this Court to address and put into perspective the concept of what has previously been labeled as fundamental error. In addition, we must also define the scope and process of review of allegations of error not preserved at trial, together with the application of harmless error analysis.

The inconsistency of the ideas of absolutely precluding harmless error in this area of the Evidence Code while allowing the possibility in other areas of the Code has forced us to re-examine our holding in *Spears*. We do so, and now hold *Spears* is incorrect insofar as it precludes the possibility of harmless error under any circumstances; and to that extent, it must be overruled.

## II.

### A.

■ This analysis must begin by turning to the Evidence Code itself. The pertinent section here reads:

> A. Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of a party is affected, and:
>
> 1. If the ruling is one admitting evidence, a timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context;
>
> ....
>
> ....
>
> D. Nothing in this section precludes taking notice of plain errors affecting substantial rights although they were not brought to the attention of the court.

12 O.S.1991, § 2104. An "error" is a deviation from a legal rule. *United States v. Olano*, 507 U.S. ——, ——; 113 S.Ct. 1770, 1777–78, 123 L.Ed.2d 508, 519 (1993). We have not specifically defined the term "substantial right"; however, we note the Oklahoma Supreme Court has defined "substantial" in this context as a "matter of substance as distinguished from matter of mere form." *Davis v. Williams*, 182 Okl. 80, 76 P.2d 251, 252 (1938). We have defined the term "plain errors," noting they are "errors affecting substantial rights although they were not brought to the attention of the court." *Jones v. State*, 772 P.2d 922, 925 (Okl.Cr.1989). Quoting 12 O.S.1981, § 2104(D), the *Jones* Court notes the term is not novel, "but is consistent with the 'fundamental error' doctrine recognized by prior caselaw." From this, we can in this context safely say a "substantial right" is the same as a "fundamental right."

Therefore, this provision in the Evidence Code is consistent with our previous holdings in which we have held failure to object to the introduction of evidence waives [1] all but fun-

---

1. This Court has traditionally used the word "waive" in this instance to describe what happens when an appellant fails to make a timely assertion of a right. We are aware this is a loose interpretation of the word "waive," which more properly refers to the *intentional* relinquishment or abandonment of a known right. The more appropriate term would be a "forfeiture" of a right by *unintentionally* failing to make a timely assertion. *See United States v. Olano*, 507 U.S. ——, ——, 113 S.Ct. 1770, 1777–78, 123 L.Ed.2d

damental error.[2] This Court has not previously embraced the applicability of the Oklahoma Evidence Code to this particular issue. However, we now hold the provisions of 12 O.S.1991, § 2104(D), provide the legal basis for appellate review of allegations of error not preserved for review during the District Court proceedings by a proper objection. We further acknowledge the existing procedure for review of "plain error" for the first time on appeal. We must therefore turn to the concept of "fundamental error", which is included in the "plain error" analysis, to determine whether reversal is mandated when such error occurs.

### B.

The term "fundamental error" apparently was first used by this Court in *Rea v. State,* 3 Okl.Cr. 281, 105 P. 386 (1909), where the definition appeared in syllabus 2(c) as errors "which go to the foundation of the case, or which take from a defendant a right which was essential to his defense." This definition has maintained its integrity since that time. *See e.g., Morrison v. State,* 37 Okl.Cr. 359, 361, 258 P. 1050 (1927); *Tyler v. State,* 74 Okl.Cr. 39, 41, 122 P.2d 826, 827 (1942); *Jones v. State,* 77 Okl.Cr. 285, 303, 141 P.2d 109 (1943); *Smith v. State,* 79 Okl.Cr. 1, 29, 151 P.2d 74 (1944); *Holman v. State,* 97 Okl.Cr. 279, 284, 262 P.2d 456 (1953); *Jones v. State,* 772 P.2d 922, 925 (Okl.Cr.1989). From this, it is obvious this Court in the past has interpreted the terms "plain error," "fundamental error" and "substantial right" to connote the same meaning. This is an important point, which we discuss in more detail below. Suffice it to say here that pursuant to our prior jurisprudence, the application of the concept of "fundamental error" means this Court will review on appeal an allegation of error even if an objection was not made at trial, if the alleged error meets the definition. Review of an alleged item of

"fundamental error" does not mean *ipso facto* the error, if found, will mandate reversal. It only means the error can be reviewed on appeal; and waiver by failure to object will not preclude its review.

■ This Court has also used other terms in dealing with the determination of when reversal is required. Some cases use the term "injury," observing that not only error, but error plus "injury" is necessary before this Court will reverse a conviction. "Injury" has been defined as "an error which affected the result." *Ryan v. State,* 8 Okl. Cr. 623, 627, 129 P. 685 (1913). Others speak of "material" in the context of "material error" or "material character," which is defined as something "of solid or weighty character; of consequence; not to be dispensed with; important; specific; especially law, such as does or would affect the determination of a case, the effect of an instrument, or the like; constituting a matter that is entitled to consideration, such as must be considered in deciding a case on its merits." *Thompson v. State,* 6 Okl.Cr. 50, 67, 117 P. 216 (1911). We find as a practical matter there seems to be little difference in the terms. Whatever the label, an error which has no bearing on the outcome of the trial will not mandate a reversal.

The State argues in the alternative that, even if the complaint is not deemed waived, it is harmless beyond a reasonable doubt. We therefore must examine the terms to determine if fundamental error can be harmless, and the standard this Court must use in determining when reversal must occur. A review of past cases indicates the difference between the terms "harmless error" and "fundamental error" seems to be important primarily when it comes to preserving the record for review.

---

508, 519 (1993). However, we need not address that difference in this case.

**2.** We note the same concept appears in other statutes. The Legislature has charged both this Court and all other appellate courts with the directive that no judgment "shall be set aside or new trial granted ... in any case, ... on the ground of misdirection of the jury or for error in

any matter of pleading or procedure, unless it is the opinion of the reviewing court that the error complained of has probably resulted in a miscarriage of justice, or constitutes a substantial violation of a constitutional or statutory right." 20 O.S.1991, § 3001.1. This statute has been in effect in one form or another since statehood, and is discussed in more detail below.

### III.

### A.

When defense counsel fails to object, the earlier courts deemed the error waived on appeal and did not review it.[3] Perhaps the strongest example of such a policy was shown in *Huff v. Territory*, 15 Okla. 376, 85 P. 241 (1905), where this Court's predecessor noted the court committed error when he ordered the arrest of a witness on a witness stand. The territorial court observed this action was "such an infringement of the rights of the defendant as would warrant the reversal of the judgment and the granting of a new trial, if the error had not been waived by a failure to object or except to the action of the court." *Id.* at 383, 85 P. at 243. Responding to appellate counsel's assertions the error was fundamental, the Court noted his authorities were not persuasive, adding:

> When the defect goes to the jurisdiction of the court, or the sufficiency of the charge to support the judgment, an appellate court will examine into such questions, although presented for the first time in said court, unless they have been waived by some express action of the accused. But errors occurring on the trial of the cause must be excepted to and presented in the motion for new trial, or they will be treated as waived by the accused. The proceedings here complained of come within the latter class.

*Id.* A historical exposition for this stringent requirement was enunciated in *Bias v. United States*, 3 Ind.Terr. 27, 53 S.W. 471 (1899):

> "Upon the question of exceptions in a case of murder, there seems to be upon the part of the bar, a prevailing idea that courts of appeal will notice and pass upon errors, whether exceptions are saved or not. . . . We know of no law which makes a difference between a criminal and a civil case in this particular, and presume that the practice has grown up because of the disposition of courts of appeal to act leniently in cases involving human life, because of the magnitude of the issue. The issue, however, is not greater here than it was in the court below, and rests no more heavily on the shoulders of the court than on those of defendant's counsel. . . . One of the objects of making an exception specific and certain is that the judge of the trial court shall have it pointed to him, that he may correct it then and there, or at least have an opportunity to do so. . . . The [United States] supreme court say: 'There was no pretense that the charge of the court . . . was erroneous in every part, and no exception to any particular part is shown. The rule is that general exceptions to a charge, which do not direct the attention of the court to the particular portions of it to which objection is made, raise no question for review.'" And the supreme court refused to consider those only pointed out by the brief.

*Id.* at 38–39, 53 S.W. at 475.

■ Later cases noted the Court could review for fundamental error.[4] These cases

---

3. *See Price v. State,* 1 Okl.Cr. 358, 363, 98 P. 447 (1908) (merely saying "objected to" instead of stating reason for objection led this Court to hold "no legal objection was made"; consequently, this Court did not consider the matter at all); *Id.* at 375, 98 P. 447 (trial court restricted questioning of witnesses; this Court held the error waived because no offer of proof was made as to the evidence sought to be gained from the questioning); *Douglas v. Territory,* 1 Okl.Cr. 583, 587, 98 P. 1023 (1909) (Where counsel did not object to court's attempting to define "reasonable doubt" during trial, but did object to definition given, complaining the court did not explain sufficiently, Court did not consider on appeal the complaint the trial court erred in defining "reasonable doubt"); *Hance v. State,* 2 Okl.Cr. 124, 126, 100 P. 260 (1909) (appellate briefs were not filed; this Court held the appeal waived except for the jurisdiction of court, the sufficiency of

indictment and regularity of judgment); *Cave v. United States,* 2 Okl.Cr. 258, 267, 100 P. 1118 (1909) (failure to object and except to court's rulings allowing in evidence waived; not considered on appeal).

4. *See Bennefield v. United States,* 2 Okla.Cr. 44, 49, 100 P. 34 (1909) (on rehearing) (Court will not on appeal review errors not objected to at the trial, nor included in the grounds of a motion for a new trial in the trial court, but appearing for the first time in the motion for rehearing, "unless such errors are fundamental or jurisdictional"); *Sturgis v. State,* 2 Okl.Cr. 362, 398–99, 102 P. 57 (1909) (counsel must not only object to improper comments by prosecutor, but must also move the court to exclude the remarks from consideration, "unless the remarks were of such a character that the error would not be cured by a withdraw-

seem to indicate that, if this Court has had an area in which it routinely errs, it would be in reviewing based on the concept of fundamental error and reversing all cases where a proposition is otherwise waived because it was not properly preserved. *See Jones v. State*, 772 P.2d 922, 925 (Okl.Cr.1989) (indicating fundamental review should be conducted only in "exceptional circumstances" "if they seriously affect the fairness, integrity or public reputation of judicial proceedings"). As previously stated, an application of a fundamental error concept only allows a review on appeal of an allegation of error to which no objection was made at trial if that error meets the definition of plain error. It does not alter the process of reviewing the allegation of error in the normal analysis methodology which includes not only a showing of error plus injury, but also a harmless error review.

### B.

Harmless error is nothing this Court invented. In 1909 this Court observed

> ... there must be prejudice, injury, or harm from a technical error before it could be ground for a reversal. This is our position precisely. There is nothing new or revolutionary about it. We are simply resetting the ancient landmarks and enforcing a principle which cannot be disputed, without doing great violence to justice, but which is too often lost sight of and disregarded by appellate courts.[5]

*Moody v. United States*, 2 Okl.Cr. 662, 667, 103 P. 862 (1909) (on rehearing). While fundamental error becomes relevant when an error is not properly preserved by objection, early cases indicate harmless error comes into play when a point is properly preserved for appellate review. The idea is succinctly stated in *Bilton v. Territory*, 1 Okl.Cr. 566, 99 P. 163 (1909), where this Court stated:

> Where the language used by the assistant United States attorney in his opening statement is calculated to prejudice the accused, and proper objection is made and overruled by the court, and exception taken, the question will be reviewed by this court, but not otherwise. Where the assistant United States attorney in his argument to the jury went outside of the record, and appealed to the passions and prejudices of the jury, and objection was made and overruled, the strength of the testimony against the defendant will be considered, and, if the improper statements may have determined the verdict, a new trial will be granted.

*Id.* at 583, 99 P. 163. At the time of statehood and before, the books contained a statute (Wilson's Rev. & Ann.St.1903, § 5618) which read: "[o]n an appeal the court must give judgment without regard to technical errors or defects or to exceptions which do not affect the substantial rights of the parties."[6] *See e.g., Morris v. Territory*, 1 Okl. Cr. 617, 647, 99 P. 760 (1909), where the statute is quoted. It is the presence of this statute prohibiting reversal unless a substantial right has been affected that differentiates Oklahoma from other jurisdictions. *Compare Eierman v. United States*, 46 F.2d 46, 49 (10th Cir.1930) (error presumed injurious unless it affirmatively appears harmless) *with Mitchell v. State*, 7 Okl.Cr. 563, 569–70, 124 P. 1112 (1912) (the common law doctrine stating an error is presumed injurious is not recognized in Oklahoma; therefore, there is no reversal unless a defendant can show he is

---

al of the remarks"); *Morris v. Territory*, 1 Okl.Cr. 617, 628, 99 P. 760 (1909) (court will not review complaint unless the error was "fundamental").

5. This Court made no secret of its contempt for raising technical errors on appeal. In *Ryan v. State*, 8 Okl.Cr. 623, 629, 129 P. 685 (1913), the Court noted the term "technicality" "has well been defined as a microbe, which, having gotten into the law, gives justice the blind staggers."

6. Compare that statute with the one currently in effect:

No judgment shall be set aside or new trial granted by any appellate court of this state in any case, civil or criminal, on the ground of misdirection of the jury or for error in any matter of pleading or procedure, unless it is the opinion of the reviewing court that the error complained of has probably resulted in a miscarriage of justice, or constitutes a substantial violation of a constitutional or statutory right.

20 O.S.1991, § 3001.1.

deprived of a substantial right to his injury).[7]

Obviously, the weaker the evidence against a defendant, the less likely the error is to be harmless. *Compare Foster v. State*, 11 Okl. Cr. 25, 34, 141 P. 449 (1914) (when evidence is strong, a conviction will not be set aside, even if the error would require reversal in a doubtful case) *with Mayberry v. State*, 64 Okl.Cr. 298, 301, 79 P.2d 1027 (1938) (if the evidence against a defendant is weak and unsatisfactory, the record should be free from prejudicial error to avoid reversal).

Here, the complained-of evidence is strong and consistent. This leads us to the crux of this discussion. We have previously held failure to have a hearing in accordance with the directives of 12 O.S.Supp.1986, § 2803.1 is fundamental error, which both allowed review for the first time on appeal and in the cases presented, required reversal. Here, counsel failed to object, which waives for consideration all but fundamental error. We must now determine whether fundamental error, properly referred to as plain error, can be harmless; or, put another way, whether it mandates reversal in all instances. We hold it does not.

### IV.

Our decision that plain error is subject to harmless error analysis is based primarily in logic and the settled rule of statutory con-

struction that a Legislature is presumed not to do a vain act. The following illustration based on cases we encounter every day points out the fallacy in holding plain error always necessitates reversal.

Typically, a witness is on the stand, and the prosecutor seeks to elicit certain evidence from him. The prosecutor asks the question, and the witness gives a very damning answer.[8] We see two relevant possibilities:

(1) **If defense counsel objects,** and the trial court overrules the objection and allows in the evidence, the court has committed error. However, as we noted above, it is not only error, but also injury, that requires reversal. As injury has been defined as "an error which affected the result," applying harmless error analysis this Court will not overturn unless appellant can show the improper evidence contributed to the conviction.

(2) **If defense counsel does not object,** this Court has repeatedly held the error is waived for all but fundamental error, now properly known as plain error, which has been defined as an error which goes to the foundation of the case, or which takes from a defendant a right essential to his defense. As we have *traditionally* interpreted this definition, if the improper evidence contributes to the conviction, we will reverse with-

---

7. *See also Reed v. State*, 2 Okl.Cr. 589, 624, 103 P. 1042 (1909) (prosecutor's comments considered "in reference to the evidence"); *Ryan v. State*, 8 Okl.Cr. 623, 628, 129 P. 685 (1913) (a "conviction must not be reversed on account of error which does not prejudice the substantial rights of the defendant".... Court opines verdict sustained by the testimony, and "no material error" was committed); *George v. United States*, 1 Okl.Cr. 307, 319, 97 P. 1052 (1908) (rehearing) ("We desire to reaffirm the announcement, heretofore made, that when a defendant is clearly guilty, this court will not reverse a conviction upon a technicality or exception which does not affect the substantial rights of the defendant"); *Stewart v. Territory*, 2 Okl.Cr. 71, 72, 102 P. 649 (1909) ("it is the duty of the counsel, in presenting their cases upon appeal, to place their fingers upon the place that hurts, and clearly point out the special error complained of, and show that it was prejudicial to their clients"); *Price v. Territory*, 1 Okl.Cr. 508, 515, 99 P. 157 (1909) (quoting statute, Court declines to grant relief unless the "substantial rights of the accused were injurious-

ly affected"); *Byers v. Territory*, 1 Okl.Cr. 677, 680, 100 P. 261 (1909) (asking whether the admission of improper evidence deprived the defendant of a "fair and impartial trial", Court said the question "can only be properly determined by a careful reading and investigation of all the evidence contained in the record"; mentions the term "harmless error" at 681); *Douglas v. Territory*, 1 Okl.Cr. 583, 588, 98 P. 1023 (1909) (counsel did not attempt to point out "wherein the defendant was injured by the refusal of the court to give" an instruction); *Thompson v. State*, 6 Okl.Cr. 50, 64, 117 P. 216 (1911) (before reviewing court will set aside judgment, an appellant must show not only error in proceedings, but also "it must appear from the record that the defendant has suffered some injury from such error").

8. For purposes of discussion we assume the evidence is substantially more prejudicial than probative, and is thus inadmissible (12 O.S.1991, § 2403).

out harmless error analysis, even though no objection was lodged.

In other words, failure to object coupled with the allegation of plain error on appeal would give an Appellant more favorable review of this issue than in an instance where an objection was properly lodged. Were this the intended result, there could be only one logical conclusion: there is no need to object. Defense counsel can "lay behind the log" by doing nothing, yet obtain relief from an appellate court, even though by doing nothing counsel fails to give the trial court the opportunity to correct the mistake, and may have deliberately built error into the record. If there is no need to object, the statute dictating an objection must be made (12 O.S.1991, § 2104) becomes useless, and the Legislature has done a vain act. This is inconsistent with both the law and equity. Therefore, there must be circumstances where an error, even though constituting plain error (in that it goes to the foundation of the case), does not do anything so egregious that a new trial is warranted.

This problem is not one solely identified by this Court but has been recognized by evidence authorities. *See* Saltzburg and Redden, *Federal Rules of Evidence Manual* at 19 (2d ed. 1977), where the author said:

"The Rule may thus be contradictory. On the one hand it suggests that there is a penalty for failing either to object or make an offer of proof, *i.e.*, an Appellate Court will not consider any error on appeal unless substantial rights are affected. But, if any error is harmless unless substantial rights are affected, it is not clear what is gained by making a timely objection at trial."

At least two other authorities have suggested there *is* a difference between fundamental/plain error and reversible error.

Although Rule 103 [the federal equivalent of our 12 O.S.1991, § 2104] requires that both reversible error and plain error affect substantial rights, the Rule does not attempt to distinguish between the former which suffices as a ground for reversal only when the error was called to the attention of the trial judge, and the latter which suffices even though the error was not raised below. The courts have been equally taciturn.

In his discussion of Rule 52 of the Federal Rules of Criminal Procedure, subdivision (a) of which refers to harmless error while subdivision (b) deals with plain error, Professor Moore has concluded:

The form in which the Rule is drafted is ambiguous. It might be read as creating a distinction in degree between errors raised below which, once found to be prejudicial, automatically give rise to reversal, and error not raised below which must be "very" prejudicial to produce a reversal. Many appellate decisions *speak* as if premised on this distinction but one cannot find any real difference in the way the different verbal formulae are actually applied to the facts of particular cases.

Weinstein & Berger, *Evidence* § 103[07] (quoting 8A *Moore's Federal Practice* § 52.-02) [parenthetical added] (emphasis in original) (footnote omitted).

Another authority has said:

Appellate courts ordinarily are chary of claims of plain error because of their fear that they are being made unwitting accomplices to defense counsel who deliberately forgo the making of an objection in the hope that the trial court will unwittingly commit reversible plain error. To guard against such abuse of the adversary process, appellate courts insist that the error at trial to have been quite clear and obvious despite the absence of any objection. Furthermore, as a practical matter, the party claiming plain error will carry a far greater burden in convincing an appellate court that the error, even if "obvious," was prejudicial. This principle of "prejudice plus" is sometimes enshrined in a formal rule.

1 Wigmore, *Evidence* at 796, § 18 (4th ed. 1983).

A few federal cases (more recent than *Eierman*, cited above) have addressed the situation, and appear to reach the same result. In *Herzog v. United States*, 235 F.2d 664 (9th Cir.1956), *cert. denied*, 352 U.S. 844, 77 S.Ct. 54, 1 L.Ed.2d 59 (1956), an appellant

complained of an instruction which tended to nullify his defense of inadvertence and confusion during a trial for an income tax violation. There was no objection at trial to the instruction. The court held:

> ... If we felt ourselves confronted with an extraordinary situation such as would justify a disregard of Rule 30 [9] we would consider the argument. But a reading of the instructions as a whole, plus an examination of the evidence pertinent to the matters being reheard, leaves us with no belief or apprehension that the giving of the willfulness charge may have resulted in a miscarriage of justice or in the denial to appellant of a fair trial.

*Id.* at 668. In *United States v. Gomez–Osorio,* 957 F.2d 636 (9th Cir.1992), an appellant complained on appeal an expert witness improperly testified. The court noted error, but declined to reverse, noting the testimony was not referred to in closing argument, the complained-of testimony was only a part of the remainder of the testimony offered, and the remainder of the evidence sufficiently supported his conviction. The court concluded a new trial was not necessary "to prevent a miscarriage of justice or to preserve the integrity of the judicial process." *Id.* at 642 (quoting *United States v. Bustillo,* 789 F.2d 1364, 1367 (9th Cir.1986)).

This "miscarriage of justice" philosophy was also noted in *United States v. McGill,* 952 F.2d 16 (1st Cir.1991). There, appellant, a jail guard, was charged with violating a prisoner's civil rights by playing a form of Russian roulette with him he had seen in the movie "The Deerhunter." During trial, the prosecution played the film for the jury. Defense counsel did not object to the film's playing at trial. The court noted the undeniably prejudicial effect the film would have, but said its focus must be on whether the "fundamental fairness of the trial" was undermined; or putting it another way, wheth-

er "a miscarriage of justice would otherwise result." *Id.* at 18 (quoting *United States v. Frady,* 456 U.S. 152, 163 n. 14, 102 S.Ct. 1584, 1592 n. 14, 71 L.Ed.2d 816 (1982)). The court added that the movie was relevant, and

> "[s]o long as evidence is relevant, it is hen's-teeth rare that we, from the vista of a cold appellate record, can justifiably say, particularly in the absence of a contemporaneous objection, that the evidence's probative value was so outweighed by the specter of unfair prejudice that its introduction constituted reversible error. [10] Indeed, the cases are legion in which we, and other courts, have refused to overturn verdicts notwithstanding the trial judge's allowance of evidence which, though relevant, was grisly, sensational, or otherwise daunting."

*Id.* at 18–19.

In summary, then, "plain" or "fundamental" error allows an appellant to get before this Court a complaint which would otherwise be completely waived. However, the fact an error may be plain and prejudicial does not automatically guarantee reversal. In other words, it gets an appellant's foot in the door; it does not guarantee a sale, which should be "hen's-teeth rare."

Enacting a rule requiring "prejudice/injury plus" or that an error be "very" injurious or prejudicial would strike a balance between the old, draconian rule barring an appellant from any possible relief because his attorney failed to preserve an error; and reflexively reversing every time an error might prejudice a case when to do so would not prevent a "miscarriage of justice," and we do so here. *Cf. United States v. Olano,* 507 U.S. ——, ——, 113 S.Ct. 1770, 1776–77, 123 L.Ed.2d 508, 518 (1993) (In discussing the difference between "harmless error" which governs errors not forfeited by failure to raise an objection, and "plain error," which governs those otherwise forfeited, the Supreme Court ob-

---

**9.** That rule read at the time of his trial: "No party may assign as error any portion of the charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection." The court read the rule in connection with its Rule 52(B), which stated "Plain errors or defects af-

fecting substantial rights may be noticed although they were not brought to the attention of the court." *Id.* at 665.

**10.** [footnote 4 by the court] "Plain error is, of course, different, and harder for an appellant to come by, than "reversible error." [citations]."

served the decision to correct the plain error lies within the "sound discretion" of the appeals court, "and the court should not exercise that discretion unless the error 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.' " (quoting *United States v. Young*, 470 U.S. 1, 15, 105 S.Ct. 1038, 1046, 84 L.Ed.2d 1 (1985) and *United States v. Atkinson*, 297 U.S. 157, 160, 56 S.Ct. 391, 392, 80 L.Ed. 555 (1936)).[11] In other words, the concept of justice encompasses not only that the innocent should go free, but also that the guilty should be held accountable. We conclude fundamental error is merely a vehicle to bring before this Court on appeal alleged errors which would otherwise be waived by failure to object at trial; it is not a separate basis for review of alleged errors on appeal.

## V.

■ Having determined fundamental error is merely a vehicle to bring before this Court on appeal alleged errors which would otherwise be waived by failure to object at trial, we must now determine the appropriate standard of review for this type of error.

■ As stated above, the common law doctrine that an error presumes injury is not recognized in Oklahoma. *Mitchell v. State*, 7 Okl.Cr. 563, 569–70, 124 P. 1112 (1912). Therefore, the burden is on an appellant to show injury in most circumstances.[12]

Exactly how far an appellant must go to show this injury is uncertain. Two cases, *Seth v. State*, 647 P.2d 452, 455 (Okl.Cr.1982) and *Glasgow v. State*, 572 P.2d 290, 292 (Okl.Cr.1977), state the appellant bears a "heavy" burden of proving prejudice. *Glasgow* cites as authority 20 O.S.1971, § 3001, a statute which is essentially the same as the one in effect today.[13] Beyond that, we have not addressed the question concerning the threshold of proof which must be met before an appellant can show prejudice.

Caselaw is also limited on the standard which must be shown by the State to show the error was harmless once an appellant has met his "heavy" burden. The standard for constitutional violations is well-known: reversal is in order unless the State can show the error was harmless beyond a reasonable doubt. *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967); *Fritz v. State*, 730 P.2d 530, 534 (Okl.Cr. 1986); *In re Bishop*, 443 P.2d 768, 773 (Okl. Cr.1968). This standard has effectively supplanted what would appear to be an even higher standard used by this Court in pre-*Chapman* cases, where denial of a constitutional right required reversal "unless the record clearly shows the right was waived, or that *no injury* could have resulted to the accused by reason of such denial." *Benton v. State*, 86 Okl.Cr. 137, 156, 190 P.2d 168 (1948) (emphasis added); *Chuculate v. State*, 36 Okl.Cr. 404, 406–07, 254 P. 984 (1927).[14] Under that standard, a constitutional viola-

11. Under these facts, we need not decide the exact meaning of the term "miscarriage of justice." We note in passing the Supreme Court has defined the term (at least as to matters brought on collateral review) to mean the defendant is "actually innocent." *Olano*, 507 U.S. at ——, 113 S.Ct. at 1779, 123 L.Ed.2d at 521. Whether that is an appropriate standard on direct review is a question we can save for another day.

12. *Killough v. State*, 6 Okl.Cr. 311, 316–17, 118 P. 620 (1911); *Swartz v. State*, 6 Okl.Cr. 590, 593, 120 P. 1029 (1912); *Anderson v. State*, 8 Okl.Cr. 90, 103, 126 P. 840 (1912); *Weathers v. State*, 35 Okl.Cr. 292, 250 P. 805 (1926); *Glenn v. State*, 72 Okl.Cr. 165, 171, 114 P.2d 192 (1941); *Tanner v. State*, 381 P.2d 888, 891–92 (Okl.Cr.1963); *Kerr v. State*, 462 P.2d 268, 269 (Okl.Cr.1969).

13. The author does not disagree with Judge Chapel's comments concerning 20 O.S.1991, § 3001.1 in his dissent. However, Section 3001.1 does *not* allocate the *burden of proving injury* one way or the other. It simply sets the standard which requires reversal. What we are doing in *Simpson* is allocating the burden in *non-constitutional* issues where it belongs: on the party who had the opportunity to correct the error at trial but chose not to do so.

14. There is one other difference between constitutional errors and non-constitutional ones: as noted above, an appellant must first show prejudice from a non-constitutional error; but in a constitutional error, all he need show is the error, and prejudice is presumed, casting the burden on the State to prove the error was harmless. In addition, we perceive some constitutional violations could not be harmless.

tion would appear to be strict in theory, but fatal in fact.

However, Appellant has not raised a constitutional error; he has raised an error which occurred as a result of the court's failure to adhere to the dictates of a state statute. We have not addressed this particular aspect to any appreciable extent.

It appears the federal standard at one time required proof the error was harmless beyond a reasonable doubt on *all* errors, whether constitutional or not. *See United States v. Gilliland,* 586 F.2d 1384, 1391 (10th Cir.1978). In such a case, the only difference would be the threshold burden which required a showing of injury in a non-constitutional case. However, it appears the federal standard has changed. In *United States v. Rivera,* 900 F.2d 1462 (10th Cir.1990), the appellate court noted that in non-constitutional situations, an error is harmless unless it had a "substantial influence" on the outcome, or leaves the reviewing court in "grave doubt" as to whether it had such an effect. *Id.* at 1469 (citing *Kotteakos v. United States,* 328 U.S. 750, 765, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557 (1946)). *Kotteakos* itself asks the question "what effect the error had or reasonably may have had on the jury's decision," adding "[t]his must take account of what the error meant to them, not singled out and standing alone, but in relation to all else that happened." [15] The Court observed if the reviewing court was sure "the error did not influence the jury, or had a very slight effect, the verdict should stand, except perhaps where the departure is from a constitutional norm." *Id.* We believe this to be a fair standard and use it here.

## VI.

■ Therefore, we hold the error of the trial court in failing to hold an *in camera* hearing does not mandate reversal in this case. We do so because we have no "grave doubts" this failure had a "substantial influence" on the outcome of the trial. *See J.J.J. v. State,* 782 P.2d 944, 945–976 (Okl.Cr.1989) (trial court committed error by not holding a hearing out of the presence of the jury to determine the reliability of the hearsay testimony *before* it was presented to the jury as required by § 2803.1. No specific objection to the testimony. No error necessitating reversal: "Had the judge heard the same evidence *in camera,* there is no doubt that he would have made the same ruling.") In particular, the child victim testified at trial and afforded Appellant his right of confrontation. Her testimony was consistent and virtually identical to the testimony of the school psychologist and the social worker. This evidentiary record affords this Court the ability to determine the reliability of the testimony admitted pursuant to Section 2803.1.

Accordingly, this proposition of error is without merit.

## VII.

For his second and last proposition of error, Appellant claims his counsel was ineffective. He claims prejudice in two areas: failure to object to an evidentiary harpoon; and failure to object to the introduction of nineteen (19) pornographic magazines.

■ We begin with the strong presumption trial counsel's conduct falls within the

---

**15.** It is here the author fundamentally disagrees with Judge Chapel's dissent. His complaint is Simpson cannot exercise his right to test the reliability of out-of-court statements made by the child-victim under the statute; he would hold the mere "non-compliance with the state's requirement that a hearing on the reliability of out-of-court statements also constitutes harmful reversible error." *Post* at 706. The "harm" or "injury" here would be failure to comply with the provisions of the statute *itself,* not the *result* of that failure. This Court deals with errors—both real and imagined—which occur in actual trials affecting actual people. One does not get credit for merely finding errors and spotting problems; one must show injury in a non-constitutional issue. Clearly, the statute should have been followed here. However, the Court's purpose here is to determine whether the statements are reliable or trustworthy, and hence admissible. Appellant had the opportunity at trial to object and require the hearing required by the statute; for whatever reason, he chose not to do so. The burden should be upon him to prove he was harmed by the failure of the court to screen the testimony of the witnesses before it was presented to the jury. This Court has determined in its review the statements were trustworthy, and the child testified; therefore, no constitutional concerns are implicated, as Simpson was not denied his right to test the statements' reliability through cross-examination.

range of reasonable professional assistance. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Williamson v. State,* 812 P.2d 384, 412 (Okl.Cr.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1592, 118 L.Ed.2d 308 (1992). Additionally, Appellant must show not only his counsel was incompetent, but that his incompetence in the complained-of area had an effect on the outcome of the trial. *Id.*

 Initially, we find no merit to Appellant's complaint concerning the magazines. Although when the magazines were first introduced, Appellant did object, he did so based on his earlier motion to suppress, which had been overruled. This Court will not consider as a basis for a proposition any objection other than the one offered at trial. *Grant v. State,* 764 P.2d 214, 215 (Okl.Cr. 1988); *Hughes v. State,* 762 P.2d 977, 979 (Okl.Cr.1988). Consequently, we will review only on the basis of Appellant's claim of incompetent counsel.

 Appellant has failed to preserve this portion of his complaint, as the magazines he complains of were not included in the record presented to this Court. Consequently, we cannot determine the effect such magazines might have had on the jury's determination. It is Appellant's responsibility to ensure this Court has a complete record for review. *Hainey v. State,* 740 P.2d 146, 152 (Okl.Cr.1987); *Avey v. State,* 723 P.2d 989, 992 (Okl.Cr.1986); *O'Dell v. State,* 654 P.2d 621, 622–23 (Okl.Cr.1982); *Nelson v. State,* 355 P.2d 413, 416–17 (Okl.Cr.1960). If the claimed irregularity is not apparent from the record there is a presumption of regularity in the trial court proceedings. *Huntley v. State,* 750 P.2d 1134, 1136 (Okl.Cr.1988); *Cooper v. State,* 599 P.2d 419, 422 (Okl.Cr. 1979); *Battles v. State,* 513 P.2d 1314 (Okl. Cr.1973). Appellant therefore has not rebutted that presumption of regularity.

 Concerning the harpoon, Appellant has not presented us with anything to show the objection to the evidence would have made a difference in the outcome of his trial. In view of the strong evidence against Appellant, we do not think this failure would have made such a difference. Consequently, we find this proposition to be without merit.

Accordingly, Appellant's convictions are AFFIRMED.

CHAPEL, Judge, dissenting:

Constitutional and statutory criminal procedures serve an important and vital function, even in horribly tragic cases like the one before the Court today. Such constitutional and statutory safeguards protect the fairness of the judicial proceeding and ensure the reliability of its outcome. Without such safeguards we revert essentially to the tyranny of mob justice. Under our judicial system it is not supposed to be easy for the State to convict a citizen of a crime. Not only is the State obligated to simply prove that a defendant committed an offense, but also to prove beyond a reasonable doubt that the defendant is guilty. Moreover, and just as important, in convicting a citizen, the State, more than any other party to litigation, must be held accountable to follow our constitutional and statutory criminal rules and procedures.

In this case, Simpson argues his conviction ought to be reversed because the trial court failed to hold a hearing to determine the reliability of certain hearsay evidence. Failure to hold this hearing violates an Oklahoma statute, 12 O.S.1991, § 2803.1. Simpson did not object to this error at trial and asserts now, on appeal, the error is "fundamental" warranting reversal. *See generally Spears v. State,* 805 P.2d 681, 682 (Okl.Cr.1991).

In reviewing Simpson's claim, the majority attempts to clarify the meaning of "fundamental error," "plain error," and "reversible error," and also engages in a lengthy discussion on the topic of harmless error. While I applaud the majority's effort to establish consistent terminology and to explain the methodology the Court should employ in analyzing trial errors, some of the conclusions and standards the majority sets forth are simply wrong. Moreover, I continue to be disturbed by the Court's willingness to find harmless error when the error was in fact harmful. Because I find certain aspects of the majority's analysis to be flawed and because I disagree with the ultimate finding that the

trial error in this case was not harmful, I dissent.

### I.

In the interest of consistency and clarity, I agree the term "plain error" should be uniformly used to describe unobjected to errors affecting substantial rights. The United States Supreme Court can provide some guidance in the meaning of that term. In *United States v. Olano,* 507 U.S. ——, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993), the Court discussed the meaning of "plain error" under the Federal Rules of Criminal Procedure. Under the federal system, plain error applies to those errors to which counsel fails to object at trial. *See* Fed.R.Crim.Proc. 52(b). Unobjected to errors rise to the level of plain error when the error is clear from the record and it affects substantial rights. The Supreme Court stated that an error affecting substantial rights "means that the error must have been prejudicial: It must have affected the outcome of the proceedings." *Olano,* 507 U.S. at ——, 113 S.Ct. at 1778. It is the defendant who bears the burden of showing prejudice with regard to plain error. *Id.*

Under the federal system plain error need not automatically result in reversal. Nonetheless, plain error should be corrected by federal appellate courts if the error " 'seriously affect[s] the fairness, integrity or public reputation of the judicial proceedings.' " *Olano,* at ——, 113 S.Ct. at 1779. Federal courts should "no doubt correct a plain forfeited error that causes the conviction or sentencing of an actually innocent defendant ... but we have never held that a Rule 52(b) remedy is only warranted in cases of actual innocence." *Olano,* at ——, 113 S.Ct. at 1779 (citations omitted). "An error may seriously affect the fairness, integrity or public reputation of judicial proceedings, independent of defendant's innocence." *Olano,* at ——, 113 S.Ct. at 1779 (citations omitted).

In contrast, an error to which counsel lodges a proper objection at trial is treated differently. When an appellant raises an error to which he objected at trial, the government bears the burden of persuading the Court that, under the harmless error doctrine,[1] the error did not prejudice the defendant. *Olano,* 507 U.S. at ——, 113 S.Ct. at 1778. One reason for the varying treatment of these different errors is that counsel should be encouraged to raise all objections at trial. By raising the objection at trial, the trial court is in a position to correct or prevent the error thus assuring a fair trial and a reliable result. Requiring an appellant to show on appeal that the unobjected to error affected substantial rights creates an incentive to make timely and proper objections at trial so as to avoid having to make the "substantial rights" showing on appeal.

Although the Federal Rules of Criminal Procedure obviously do not apply to state criminal cases, the United States Supreme Court's discussion of the plain error rule provides a useful analogy. With regard to our state rules, I agree with the majority that a plain error is an error to which counsel failed to object at trial and which affects substantial rights. In my opinion, appellant bears the burden of establishing that the unobjected to error is an error affecting a substantial right, i.e. that he was prejudiced by the error. I also agree that once an error is deemed to be plain, reversal is not warranted if the state can show that the error was harmless. Although this formulation differs somewhat from the federal rules, I feel that, on its face, it provides sufficient safeguards to ensure that an appellant's rights are protected.[2]

However, the majority does not simply stop there. In sections III A., III B., IV, and V of the majority opinion, the majority imposes upon appellant the additional burden to show injury even where the error was properly preserved or found to be plain error

---

**1.** *See Chapman v. California,* 386 U.S. 18, 23, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967); Fed. R.Crim.Proc. 52(a). *See also* 20 O.S.1991, § 3001.

**2.** I further find that the majority's decision to overturn *Spears v. State,* 805 P.2d 681, 682 (Okl.

Cr.1991), to the extent that is inconsistent with the majority's decision, is misguided. *Spears* dealt with the notice provision of § 2803.1. This case deals with the hearing provision of § 2803.1.

before reversing. *Supra,* at 696–698, 700, 701–702. I strongly disagree with the notion that an appellant has the burden to show injury in such a case. When an appellant raises an error to which he objected at trial but which was not cured by the trial court or when an appellant raises an error which rises to the level of plain error, the only issue before this Court is whether appellant was harmed by that error and if any party has a "burden" it is the state's burden to show the error is harmless. Indeed, in a plain error case the appellant will have already once shown injury or prejudice; if not, the error would not be plain. Creating an additional ill-developed "injury" hoop through which appellant must jump serves no purpose and does not answer the critical question before this Court: was the error harmful.

The concept of harmless error is well-established and particularly helpful in resolving meaningless errors which occur in most trials but which do not affect the fairness or outcome of the proceedings. Under this doctrine, not every constitutional error occurring at trial warrants reversal of appellant's conviction. *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). Constitutional error need not result in reversal of a conviction if "the beneficiary of a constitutional error ... prove[s] beyond a reasonable doubt that the error complained of did not contribute to the verdict." *Id.* 386 U.S. at 24, 87 S.Ct. at 828. *See Fahy v. Connecticut,* 375 U.S. 85, 84 S.Ct. 229, 11 L.Ed.2d 171 (1963); *James v. State,* 818 P.2d 918, 921–922 (Okl.Cr.1991). The burden thus is on the State—the beneficiary of the error—to prove beyond a reasonable doubt that the error is harmless.

Of course, not all constitutional violations are subject to harmless error analysis. For example, violations of the right to trial counsel, the right to an impartial judge, the prohibition against double jeopardy, the right to a representative jury and grand jury, and the right to a reasonable doubt instruction, are

not subject to the harmless error rule. C.H. Whitebread & C. Slobogin, *Criminal Procedure* at 778–779 (3d ed. 1993). Thus, certain errors, whether there was an objection lodged at trial or not, would not be subject to harmless error analysis and would always constitute reversible error.

The Oklahoma legislature has established the harmless error rule to be applied in Oklahoma cases. Section 3001.1 of Title 20 provides:

No judgment shall be set aside or new trial granted by any appellate court of this state in any case, civil or criminal, on the ground of misdirection of the jury or for error in any matter of pleading or procedure, unless it is the opinion of the reviewing court that the error complained of has probably resulted in a miscarriage of justice, or constitutes a substantial violation of a constitutional or statutory right.

I view section 3001.1 as essentially codifying *Chapman.* Under 20 O.S.1991, § 3001.1, if the error "resulted in a miscarriage of justice, or constitutes a substantial violation of a constitutional or statutory right," the error is not harmless and it is reversible.

Section 3001.1 applies to both constitutional and statutory violations.[3] Despite the plain language of § 3001.1, the majority creates a new standard and applies a less stringent standard of review to violations of Oklahoma statutory rules. The majority follows several federal court decisions which apply a "substantial influence" or "grave doubt" standard for reviewing the non-constitutional errors. While that approach might be appropriate in the federal courts, it is not the rule in Oklahoma. Section 3001.1 states that reversal is the appropriate remedy if "it is the opinion of the reviewing court that the error complained of has probably resulted in a miscarriage of justice, or constitutes a substantial violation of a constitutional or statutory right." (emphasis added) Apparently the Oklahoma legislature viewed the rules of criminal procedure and evidence that it pro-

---

3. This Court has applied the harmless error analysis in evaluating statutory violations. *See e.g. Gautt v. State,* 551 P.2d 1150 (Okl.Cr.1976) (failure to follow statutory rule on corroboration of accomplice testimony subject to harmless error

analysis); *Lime v. State,* 508 P.2d 710 (Okl.Cr. 1973) (failure to comply with statutory rule on admonishing jury subject to harmless error analysis).

mulgated to be of paramount importance and as worthy of protection as constitutional rules of procedure. There is no justification for the majority's new rule and, indeed, this new rule is inconsistent with the express will of the people of the State of Oklahoma as expressed in 20 O.S.1991, § 3001.1.

## II.

I now turn to the precise question before this Court: whether in Simpson's case the failure to hold a hearing in compliance with 12 O.S.1991, § 2803.1 constitutes plain and reversible error. At Simpson's trial, two witnesses, a school counselor and a DHS worker, testified about the child-victim's out-of-court statements. Our statute, 12 O.S.1991, § 2803.1, clearly requires the trial court to hold a hearing to determine the reliability of such out-of-court statements. No such hearing was held.

Since trial counsel failed to object to the hearsay testimony, the error in failing to hold the hearing must rise to the level of plain error in order for this Court to review that error. *Spears v. State*, 805 P.2d 681, 682 (Okl.Cr.1991); *Jones v. State*, 781 P.2d 326, 330 (Okl.Cr.1989). Clearly, failure to hold the hearing violated Oklahoma law and is error. Moreover, this error affects Simpson's substantial right to test the reliability of out-of-court statements made by the child-victim. I agree with the majority that this error constitutes plain error.

The majority concludes, however, that this plain error does not warrant reversal of Simpson's conviction. I cannot agree. This Court has previously held non-compliance with the notice provision of 12 O.S.1991, § 2803.1 is not only plain error but also reversible error. *Spears, supra* at 683 (failure to give statutorily required notice warrants reversal). It is my belief that non-compliance with the state's requirement that a hearing on the reliability of out-of-court statements also constitutes harmful, reversible error. I find the failure to hold the statutorily required hearing harmed Simpson and this Court is obligated to reverse appellant's conviction.

First, I must point out that the majority mistakenly characterizes the violation of § 2803.1 as merely a statutory violation and not a constitutional violation. Relying on its incorrect assessment of § 2803.1 the majority employs a lesser standard of review in evaluating the harmfulness of the plain error at issue in this case. However, contrary to the majority's assertions, § 2803.1 addresses the reliability of out-of-court statements by a child witness and ensures that those statements bear sufficient indicia of reliability of its inherent trustworthiness so that the admission of the statements is proper under the Sixth Amendment. *See generally Idaho v. Wright*, 497 U.S. 805, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990); U.S. Const.Amend. VI. Thus, even under the majority's differing standards of review for constitutional and non-constitutional error—which as I stated earlier is a departure from well-established Oklahoma law and is contrary to 20 O.S.1991, § 3001.1—the harmless error standard should be applied in this case.

In my judgment the testimony of the counselor and the DHS worker clearly contributed to Simpson's conviction and undermined the reliability and fundamental fairness of the trial. This testimony was submitted absent any indication it was reliable. I cannot conclude such error did not prejudice Simpson. I am not persuaded by the majority's assertion that, because the hearsay statements were consistent with the child-victim's own in-court testimony, those hearsay statements are therefore reliable. Section 2083.1 contemplates that the child will testify at trial or that the child be unavailable. Thus, the legislature concluded that the hearing was necessary even though the child was testifying at trial. The consistency in the testimony does not obviate the error or the prejudice that inured to Simpson. *See Kennedy v. State*, 839 P.2d 667 (Okl.Cr.1992) (error in not holding § 2803.1 hearing not harmless error).

Notwithstanding the fact that Simpson is probably guilty, it is incumbent upon this Court to acknowledge the prejudice he suffered by failure to hold the required hearing. The hearing required by 12 O.S.1991, § 2803.1(A) is a statutory right which goes to

the foundation of child abuse cases and the ability of the defendant to confront child witnesses. It is intended to screen from the jury unreliable testimony which could severely prejudice a defendant and deny a constitutional right essential to the defense—that is the right of confrontation. U.S. Const. Amend. VI. The failure to hold this hearing deprived Simpson of his fundamental right to a fair trial and requires reversal.

For the foregoing reasons, I would reverse and remand for a new trial the convictions in Counts I, II and III. I would affirm the conviction in Count IV.